**James SIELAK, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 3954.**

Supreme Court of Alaska.

July 21, 1978.

Robert Coats, Asst. Public Defender, Fairbanks and Brian Shortell, Public Defender, Anchorage, for appellant.

Rhonda F. Butterfield, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

RABINOWITZ, Justice.

This is a sentence appeal. Upon his plea of nolo contendere, appellant James Sielak was found guilty of assault with a danger- · ous weapon in violation of AS 11.15.220.[1] The incident involved was a drunken attack by Sielak on his wife with a kitchen knife; in the attack, her hand was cut and the knife was put to her throat and breast. He was given a two-year suspended imposition of sentence. Special conditions of probation were that Sielak enroll in, and successfully complete the Fairbanks Comprehensive Alcoholism Program and that he not return to his hometown of Barrow except with the permission of the court. Three weeks after beginning the alcohol treatment program, Sielak left the program without permission. The superior court found that Sielak had violated the probation conditions of the suspended imposition of sentence and sentenced him to serve a ten year term. Sielak now appeals claiming that his sentence is excessive.

Sielak was given the maximum sentence for the crime of which he was adjudged guilty.[2] In *Waters v. State*, 483 P.2d 199, 201 (Alaska 1971), we discussed the circumstances in which a maximum sentence is appropriate:

> In sentencing, it should be remembered that the maximum sentence for a particular offense expresses a legislative judgment about how the worst offender within a class designated by the legislature should be treated.

We subsequently quoted this language in *Galaktionoff v. State*, 486 P.2d 919, 924 (Alaska 1971), and further explained:

> In general, maximum sentences should not be imposed without some foundation for characterizing a defendant as the worst type of offender.

Thus, we must consider whether the superior court was clearly mistaken[3] in classifying Sielak as a "worst offender." The superior court specifically stated its conclusion that Sielak was a worst offender. Noting the seriousness of the offense, the court stated that while Sielak wasn't a pro-

---

1. AS 11.15.220 provides:

   *Assault with dangerous weapon.* A person armed with a dangerous weapon, who assaults another with the weapon, is punishable by imprisonment for not more than 10 years nor less than six months, or by a fine of not more than $1,000 nor less than $100, or by both.

2. *See* note 1, *supra.*

3. *Cleary v. State*, 548 P.2d 952, 954 & n.8 (Alaska 1976).

fessional criminal, he was an extremely dangerous one[4] and had a long record of prior convictions, mostly similar offenses.[5]

In *State v. Wortham*, 537 P.2d 1117, 1120 (Alaska 1975), we stated some of the factors which this court has considered relevant to the characterization of a party as a worst offender:

> prior criminal convictions, age, military records, employment history, drug or alcohol addiction, presentence report evaluations and recommendations, and behavior which has been considered to demonstrate an antisocial nature or dangerous propensities which pose a clear risk to the public. (citations omitted)

In this case, we note that Sielak was 41 years old at sentencing. He had an extensive list of prior convictions stretching over twenty years, including three prior convictions for assault with a dangerous weapon and six prior convictions for assault or assault and battery. Sielak also had single convictions for robbery, careless use of firearms, and petty larceny, and numerous additional convictions for disorderly conduct and other offenses related to alcohol. Sielak's long history of antisocial behavior apparently stems from chronic alcoholism—a problem which Sielak has been unable to combat effectively, and which has resulted in a long series of violent attacks, often on small children. By initially suspending sentence, the superior court gave Sielak a chance to deal with his alcohol problem by undergoing treatment at an alcoholism treatment center. At the time he suspended imposition of sentence, the superior court explicitly reminded Sielak that he could be sentenced to incarceration for one to ten years if he violated the terms of probation. The court specifically informed Sielak that such a violation would result if he failed to enroll or participate in the Comprehensive Alcoholism Program. Sielak's withdrawal from the alcoholism program without permission not only violated one of his probation conditions but also reflected adversely on the possibility of his rehabilitation. Both the presentence report and the alcoholism center's readmission report which were before the court at sentencing reflected an extremely poor prognosis for any rehabilitation. The presentence report stated that "it appears very likely" Sielak would injure someone shortly after his release from custody and suggested a long period of incarceration.

We conclude upon our review of the record that the superior court was not clearly mistaken in classifying Sielak as a worst offender and sentencing him to the maximum term of incarceration.

Affirmed.

---

4. More specifically, the court stated that he thought Sielak was more dangerous than anybody who had previously come before the court.

5. At sentencing, the superior court discussed defendant's prior record at length. The court acknowledged Sielak's alcohol problem, but, given the minimal chance of rehabilitation, the court thought that Sielak's pattern of violent behavior from alcoholism required his isolation from society. The court also noted as significant the fact that Sielak continually blamed others for his situation and did not take responsibility for his drinking problem.