Bill KRAUS, Appellant,

v.

STATE of Alaska, Appellee.

No. 4669.

Supreme Court of Alaska.

Dec. 14, 1979.

James L. Bruce, Asst. Public Defender, Ketchikan, Brian Shortell, Public Defender, Anchorage, for appellant.

Michael A. Thompson, Acting Dist. Atty., Ketchikan, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

RABINOWITZ, Chief Justice.

At about 3 a. m. on July 18, 1978, an inebriated 20-year-old named Bill Kraus was returning to the Wrangell Young Adults Conservation Corps[1] camp after a

1. The Young Adults Conservation Corps is a federal program providing jobs for the unemployed between 17 and 23 years old. In Alaska its members work primarily on trail maintenance and reconstruction.

night out in Wrangell. Another youth came by on a bicycle, Kraus hailed him, and they walked together down the road a bit, sipping drinks from Kraus's bottle of anisette and chatting.

Suddenly Kraus pulled a pocket knife with a four or five inch blade from his pocket and put it to his companion's throat. He pushed his victim to the ground and began to stab him in the back; a struggle for the knife ensued. When a passing car pulled up, the assault ended and the victim was transported home and then to the hospital.

The police were notified and Kraus was charged with assault with a dangerous weapon. Kraus pled guilty and was sentenced to eight years imprisonment. The superior court recommended that he serve one-third of the term before being eligible for parole and added that "no parole should be granted until defendant completes Family House, Future House or a similar program." Kraus appeals the sentence.

Kraus complains that the sentence is excessive and that the superior court's recommendation concerning completion of a rehabilitation program was unconstitutional and beyond its jurisdiction. Kraus suggests that the absence of a worst offender classification makes the sentence, which is close to the maximum, suspect. He also argues

that a sentence greater in length than five years is excessive,[2] and that in reaching its sentencing decision, the superior court improperly considered isolation the primary objective.

The state responds by noting that Kraus, though not a worst offender, was close to one due to his lengthy record and sociopathic behavior. The state adds that he is a "dangerous offender," and therefore a sentence of more than five years is justified. Additionally, the state contends that the superior court's emphasis on isolation was not clearly mistaken, and that an eight-year sentence is within a "zone of reasonableness."[3]

■ We agree with the state that, although not a "worst offender," Kraus' mental and emotional disorders and past lawless conduct are such as to warrant the imposition of a sentence providing for a significant period of incarceration.[4] Clearly isolation of Kraus is indicated. We therefore conclude that the superior court's decision that probationary release of Kraus was unwarranted is not clearly mistaken. Here the nature of the crime and the past record of the offender justify a sentence exceeding five years.[5]

■ Kraus also claims that under AS 33.-15.230(a)[6] the superior court lacked the au-

---

**2.** This court has previously noted its agreement with the American Bar Association sentencing standards committee's recommendation that sentences not exceed five years except in cases involving particularly serious crimes, dangerous offenders, or professional criminals. *See, e. g., Donlun v. State,* 527 P.2d 472, 475 (Alaska 1974).

**3.** We note that the state's position that the sentence is within a "zone of reasonableness" incorporates a standard of review which this court explicitly disavowed in *McClain v. State,* 519 P.2d 811 (Alaska 1974).

**4.** "The factors used for worst offender classification are also to be applied in reviewing sentences which approach the maximum for the particular offense." *Hansen v. State,* 582 P.2d 1041, 1046 (Alaska 1978); *see Bordewick v. State,* 569 P.2d 184, 185–86 (Alaska 1977). The facts of this assault are sufficiently aggravated, and Kraus's background sufficiently unfavora-

ble to justify a lengthy sentence. His criminal record includes a juvenile conviction for assault with a dangerous weapon and ten convictions for adult misdemeanor offenses ranging from disorderly conduct to petty larceny. His work history is intermittent and includes three involuntary dismissals. He admits to frequent heavy use of alcohol and also to use of hard drugs. Only his youth militates against a lengthy period of incarceration.

**5.** We have previously stated that violent crimes involving physical injury to innocent people are to be regarded as our most serious offenses. *See Creed v. State,* 573 P.2d 1379, 1380 (Alaska 1978).

**6.** AS 33.15.230(a) provides:

*Fixing eligibility for parole at time of sentencing.*
(a) Upon entering a judgment of conviction, the court having jurisdiction to impose sen-

thority to require that parole be conditioned upon completion of a particular rehabilitation program. The state points out that this portion of the judgment was a recommendation, not an order or "requirement" as characterized by Kraus, and that it is not binding on the Parole Board.[7] The state is correct; this argument is without merit. *See* AS 33.15.060–.080. The fact that the recommendation is not binding is also dispositive of Kraus' argument that the pur-

ported "requirement" is a violation of his constitutional right to equal protection of the law.

Affirmed.

tence, when in its opinion the ends of justice and best interests of the public require that the defendant be sentenced to imprisonment for a term exceeding one year, may

(1) designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner is eligible for parole, which term shall be at least one-third of the maximum sentence imposed by the court; or

(2) fix the maximum sentence of imprisonment to be served, in which case the court may specify that the prisoner is eligible for parole at the time the board determines.

7. The recommendation was seemingly the result of the report of the psychiatric examination given to Kraus at the superior court's request. The examining psychiatrist found Kraus to have an

anti-social personality . . . not of psychotic or neurotic proportions but rather

. . . manifested as long-standing, deeply ingrained, personality traits. . . .

. . . [T]here is no indication for chemotherapy and traditional individual psychotherapy is relatively ineffective in treating individuals of this type. If his behavior is to conform to societal norm in the future, he will require a significant period of highly structured treatment including group therapy and milieu therapy with an emphasis on individual responsibility and consequences of one's behavior. Rehabilitative programs of this type are available in some urban centers and frequently designated as drug rehabilitation programs. Their emphasis on the teaching of good work habits, nuturing [sic] an individual's sense of responsibility to himself and the community and how to relate to others in a more open and less self-centered way would be most helpful to Mr. Kraus.