Glenn NEAKOK, Appellant,

v.

STATE of Alaska, Appellee.

No. 6418.

Court of Appeals of Alaska.

Nov. 5, 1982.

Paul Canarsky, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

Randy M. Olsen, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

This is a sentence appeal. Glenn Neakok was convicted of assault in the second degree in violation of AS 11.41.210(a)(1). Superior Court Judge Jay Hodges sentenced Neakok to ten years with five years suspended and five years probation, recommending that he receive alcohol treatment while incarcerated.

Neakok contends on appeal that his sentence is excessive because it exceeds the presumptive term for a second offender convicted of assault in the second degree, and because it exceeds the length required to reaffirm societal norms or to deter others in the Barrow community.

## OFFENSE

On March 23, 1981, Neakok's neighbor called the police after she heard what sounded like the severe beating of a woman occurring in Neakok's apartment. When the police arrived, they found Neakok naked, getting off the bed. The victim, L.B., was lying on the bed naked. She had a large hole in her forehead, and her face was extremely bloody. The bed was covered with blood and with feces caused by L.B.'s defecation, apparently a death reflex.

Officers arrived at the scene could detect no vital signs, but then L.B. gasped for breath. She was rushed to the Barrow Hospital and evacuated to Anchorage. According to the state, the doctor in Barrow did not expect L.B. to survive the flight to Anchorage. After brain surgery she was in a coma. However, she returned to consciousness and made a substantial recovery.

A portion of the left side of L.B.'s skull was reconstructed with wire and plastic. Her appearance causes her considerable embarrassment. At the time she was interviewed by the presentence officer, she exhibited very slow speech; however, this was improving. Her surgeon stated that her double vision problem would be permanent. L.B. apparently remains fearful of going anywhere alone.

Dr. Thomas of the Public Health Service in Barrow estimated that L.B. would require a minimum of $10,000 worth of surgery and treatment. She was scheduled at the time of sentencing to undergo plastic surgery to eliminate her scars.

When police entered Neakok's apartment, he had blood on his face, chest, legs, arms, hands, and fingernails. Three pieces of a walrus' tusk were found throughout the apartment; one was on the bed next to the victim. Blood was found splattered throughout the apartment, particularly in the bedroom. Neakok's first statement to police was: "I'm a murderer."

Immediately following his arrest, Neakok took a breathalyzer test which resulted in a reading of 0.16%. Neakok gave the police a statement. He indicated that he had been drinking for several days and left his apartment to purchase more whiskey. When he returned he found L.B. asleep on the couch. He fell asleep in the bedroom, but was awakened by L.B. walking around the living room. He stated he wanted to have sex with her and followed her to the bathroom. When she sat on the toilet, he hit her on the head with a walrus tusk until she fell off. Neakok stated he picked L.B. up off the floor and carried her to his bedroom for the purpose of having sex. She began yelling that she was hurt, and he hit her several times with the tusk to knock her out and keep her quiet. He said he took L.B.'s clothes off, removed his own, and got on top of her.

The grand jury indicted Neakok for attempted murder in the second degree and sexual assault in the first degree. Subsequently, the prosecutor dismissed the charge of attempted murder and filed an information charging assault in the first degree. Neakok's videotaped confession was read and introduced at trial. However, at trial Neakok insisted he could not remember why he attacked L.B. Following trial, the jury acquitted Neakok of assault in the first degree and sexual assault, but convicted him of the lesser included offense of assault in the second degree.

Neakok was twenty-three years old at the time of the offense. He had completed high school and received additional training in automotive and diesel mechanics. He has been a member of the Barrow Search and Rescue Team and participated in several rescues. He has had a steady employment record since 1976. The presentence report reflects that Neakok has several prior misdemeanor convictions. This is his first felony offense. At the sentencing hearing, several of Neakok's friends and relatives testified favorably on his behalf. Much of the testimony centered on whether affirmation of community norms and deterrence of others required imposition of a lengthy term of incarceration.

■ Judge Hodges considered the foregoing facts at sentencing and concluded that Neakok was among the worst offenders in the class convicted of assault in the second degree. He reached his conclusion due to the extremely brutal nature of the offense, Neakok's intent to have sexual relations with the victim, and the extreme force Neakok used to realize his intentions (as evidenced by the broken walrus tusk and the "substantial amount of blood splattered about the apartment"). We find no error in the trial court's determination that Neakok was among the worst offenders in the class.

Neakok argues that his rehabilitation prospects and progress eliminated the need for a five-year term of incarceration. He contends that the testimony which he presented at sentencing established that a lengthy term of incarceration was not necessary to deter others or to reflect community condemnation of the offense. Judge Hodges balanced the nature of the offense against the positive aspects of Neakok's history. He noted that this was his first felony conviction and that Neakok was a young offender. He believed Neakok exhibited remorse and had made acceptable rehabilitation progress, as shown by his adherence to strict bail conditions pending sentencing. He did not believe that Neakok was a professional criminal but found him to have been a dangerous offender at the time of the offense. The court found the need to reaffirm societal norms to be paramount among the *Chaney* criteria. *State v. Chaney,* 477 P.2d 441 (Alaska 1970). The court based its finding on the nature of the offense as well as the frequency of assault and sexual assault charges filed in Barrow during that year.[1]

In *Davis v. State,* 635 P.2d 481, 487 (Alaska App.1981), this court stated that in the absence of clear mistake the priority and relationship of the *Chaney* criteria is left to the discretion of trial judges. Judge Hodges was not clearly mistaken when he emphasized the deterrence of others and reaffirmation of societal norms over rehabilitation of the defendant. He clearly gave careful consideration to the rehabilitation progress of Neakok pursuant to *Padie v. State,* 594 P.2d 50 (Alaska 1979). The judge is not required to give priority to rehabilitation when the facts of the case support different results. *Bailey v. State,* 548 P.2d 373, 375 (Alaska 1976).

Neakok argues that the sentencing court gave undue emphasis to the sexual nature of the assault and that such emphasis was erroneous because Neakok had been acquit-

ted of the sexual assault charge. Judge Hodges made clear that he was not sentencing for the offense of sexual assault, but rather for assault in the second degree. He did, however, make his own finding of fact that the defendant intended sexual assault at the time of the offense. The court's finding is supported by Neakok's statement following arrest in which he indicated his sexual intentions, and by the undisputed evidence at trial that when the police arrived the naked Neakok was getting off the bed where the victim was also lying naked.

■ Verified relevant facts may be considered by a sentencing judge. *Nukapigak v. State,* 562 P.2d 697, 702 (Alaska 1977), *aff'd on rehearing,* 576 P.2d 982 (Alaska 1978). A jury's verdict does not prevent the court from making its own fact findings. *Huckaby v. State,* 632 P.2d 975 (Alaska App.1981). Judge Hodges did not place undue emphasis on the sexual aspect of the offense. The court's conclusion regarding the defendant's intent was only one of several factors considered during sentencing.

Neakok argues that the sentence exceeds the presumptive term which a second felony offender convicted of assault in the second degree would receive. AS 12.55.125(d)(1). In *Austin v. State,* 627 P.2d 657, 657–58 (Alaska App.1981), this court stated that normally a first offender should receive a more lenient sentence than the presumptive sentence a second offender would receive. The court added:

> It is clear this rule should be violated only in an exceptional case. However, it is also clear that the legislature did not intend to say that a first offender could never receive more time to serve than the presumptive sentence for a second offender, since the statute easily could have been written to accomplish that result.

*Id.* at 658.

■ The circumstances of this case justify exceeding the four-year presumptive

---

1. The court stated:

> However, the court must also take into account the nature of the offense and the court notes that since the first of January, 1981, there have been 27 assaultive type crimes, 13—of those 27, 13 have been sexually involved. That—that's out of approximately 35 to 36 cases, which have reached the superior court on a felony basis.

term mandated for a second felony offender. Usually a sentence for a first felony offender which is in excess of the presumptive sentence for a second felony offender must be justified either by specific aggravating factors under the criminal code, AS 12.55.155(c), or else by aggravating factors which would qualify as extraordinary circumstances under AS 12.55.165 and would justify a repeat offender receiving an enhanced sentence by a three judge panel. AS 12.55.175. In this case it is clear that Judge Hodges found that Neakok's conduct was "among the most serious conduct included in the definition of the offense." AS 12.55.155(c)(10). This finding is clearly supported by the record and justifies a sentence in excess of the presumptive sentence which a second felony offender would receive. The brutal nature of the offense, the fact that it nearly resulted in death, and the pressing need to deter others from similar offenses justifies exceeding the presumptive term for a second offender.

■ Neakok argues that in most cases a sentence ought not to exceed ten years and normally should not exceed five years except in exceptional cases. *Pascoe v. State,* 628 P.2d 547, 550 (Alaska 1980) (citing with approval ABA Standards, *Sentencing Alternatives and Procedures* § 2.1, at 1 (Approved Draft, 1971)). In the case at bar, the incarceration did not exceed five years. Given the defendant's history of alcoholism and violent acts when intoxicated, and the seriousness of the assault in this case, Judge Hodges was justified when he imposed a ten-year total sentence with five years suspended.

The sentence is AFFIRMED.