Gertraud PRUETT, Appellant,

v.

STATE of Alaska, Appellee.

No. A–963.

Court of Appeals of Alaska.

Sept. 2, 1987.

Rehearing Granted in Part and Opinion
Amended Oct. 27, 1987.

Phillip Paul Weidner, Weidner & Associates, Inc., Anchorage, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Ronald W. Lorensen, Acting Atty. Gen., Juneau, for appellee.

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

Before SINGLETON, J., and MATTHEWS and MOORE, Supreme Court Justices.*

## OPINION

SINGLETON, Judge.

Gertraud Pruett was convicted of one count of assault in the first degree, a class A felony, AS 11.41.200(a)(1) (recklessly causing serious physical injury to another by means of a dangerous instrument). Sentencing is governed by AS 12.55.125(c), which provides in relevant part:

A defendant convicted of a class A felony may be sentenced to a definite term of imprisonment of not more than 20 years, and shall be sentenced to the following presumptive terms, subject to adjustment as provided in AS 12.55.155 [aggravating factors]—12.55.175 [referral to a three-judge panel]:

(1) if the offense is a first felony conviction and does not involve circumstances described in (2) of this subsection, five years;

(2) if the offense is a first felony conviction, other than for manslaughter, and the defendant possessed a firearm, used a dangerous instrument, or caused serious physical injury during the commission of the offense ... seven years;

(3) if the offense is a second felony conviction, 10 years;

(4) if the offense is a third felony conviction, 15 years.

Pruett is a first-felony offender. The trial court found that she was subject to the seven-year presumptive term because she "used a dangerous instrument" and "caused serious physical injury during the commission of the offense," and, in addition, found aggravating factors. Pruett was sentenced to a maximum twenty-year period of imprisonment, without eligibility for parole. Pruett appeals her sentence.[1] We reverse and remand for resentencing to a term not to exceed fifteen years with five years suspended.

1. Pruett also appealed her conviction on a number of grounds. We affirmed Pruett's conviction in *Pruett v. State,* Memorandum Opinion & Judgment No. 1474 (Alaska App., Sept. 2, 1987).

## THE OFFENDER

Pruett was forty-nine years old at the time of sentencing. She was born in Germany, and left home at the age of twenty-two to marry Terry Park, an American serviceman stationed in Germany. Pruett came to the United States with her husband in 1957, initially residing in Fayetteville, North Carolina. She moved to Alaska in 1964. Pruett became a naturalized American citizen in 1971.

Pruett has been married three times: to Terry Park from 1957 until their divorce in 1971; to Theodore Dieke during 1971; and, to Carl Pruett from 1976 to the present. Pruett has one adult daughter, Terry Park, and a child, Traudl Pruett. During most of her life she has been a housewife, but she also worked with her husbands in their businesses. Additionally, she owned and operated a gas-service station from 1973 to 1976, and a tanning salon in 1981.

The state presented verified information at the sentencing hearing that Pruett had participated in the death of her former husband, Theodore Dieke.[2] In addition, testimony at the sentencing hearing indicated that Pruett had suborned perjury in connection with a shoplifting prosecution and on other occasions had offered to pay individuals to testify falsely.

## THE OFFENSE

Hedwig Reichle, seventy-four years old at the time of Pruett's sentencing, was a German immigrant who met Pruett in the early seventies. Pruett and Reichle became friends, and Pruett invited Reichle to move into her home and work as a housekeeper in exchange for room and board. It appears that the relationship was congenial for the first few years. Reichle testified that, in 1976, Pruett began to slap her on

occasion, and by 1982 had progressed to striking her on a daily basis with a hammer, feet or hands about her head and shoulders. In addition, Reichle testified that Pruett forced her to work many hours cleaning the house and doing yard work. Reichle testified to a consistent course of substantial physical abuse culminating on November 28, 1983, when Reichle wandered away from the Pruett residence to a local Qwik Stop convenience market where her injuries were observed and she was referred to the Brother Francis Shelter. At the Brother Francis Shelter, a nurse listed her injuries to be bruises on her lips, right arm, elbow and legs. She had multiple cuts on her right arm and a cut on her cheek; she had bumps on her lips and the back of her head. A physician's exam showed that Reichle had multiple scars on her arms, a chronic dislocation of the right shoulder, an old fracture of the nose, a cauliflowered left earlobe, multiple contusions on her body, and several broken and missing teeth. Pruett's neighbors testified to seeing Pruett strike, push and kick Reichle while both were in the yard outside Pruett's house.

Pruett denied abusing Reichle. She indicated that Reichle had made up the whole story in order to extort money in a pending civil suit. She also contends that Reichle is senile and imagines abusive treatment, that Reichle has difficulties maintaining her balance due to extreme age and frequently falls, injuring herself, and that Reichle has suffered substantial physical abuse in the past, by former husbands and boyfriends. Pruett presented a number of witnesses who testified to her good character and benign treatment of Reichle.

## THE SENTENCING

■ This case was tried to a jury, and Superior Court Judge J. Justin Ripley pre-

2. An Anchorage Police Officer testified that Dieke was injured on August 12, 1971, when a van in which he was riding went over Thunderbird Falls into a ravine. Certain "house bricks" [cement blocks] in the van were on top of Dieke when he was discovered by the officer. Dieke made statements implicating his wife in his accident. Dieke died a week later on August 19, 1971, in part from pneumonia and in part from complications from the accident. Testimony at

the sentencing indicated that Pruett and a boyfriend, Lynn Pryor, had discussed putting blocks in Dieke's van because, Pruett explained, she was going to push Dieke in the van with the blocks off the embankment by Thunderbird Falls. Pryor also testified that Pruett sought his assistance in attempting to kill Terry Park in 1967 or 1968. Judge Ripley concluded that this testimony was credible.

sided. He heard testimony from Reichle regarding her injuries, and from Pruett's neighbors describing Pruett's assaults on Reichle. In addition, he had an opportunity to observe Pruett's demeanor while she testified. He also received evidence presented at the sentencing hearing regarding Pruett's involvement in the death of Theodore Dieke, her prosecution for shoplifting, and her suborning of perjury in connection with the shoplifting case. Judge Ripley concluded that Pruett's conduct, spanning the years from 1968 to the present, established an antisocial personality that would make her very difficult to rehabilitate.[3]

Judge Ripley found five aggravating factors: that Pruett's conduct during the commission of the offense manifested deliberate cruelty to Reichle, AS 12.55.-155(c)(2); that Pruett knew or reasonably should have known that Reichle was particularly vulnerable or incapable of resistance due to advanced age ... [and] ill health, AS 12.55.155(c)(5); that Pruett's prior criminal history included conduct involving aggravated or repeated incidents of assaultive behavior, AS 12.55.155(c)(8); that Pruett's conduct constituting the offense was among the most serious conduct included in the definition of the offense, AS 12.55.-155(c)(10); and, that the offense constituted an assault and was committed against a member of the social unit comprised of those living together in the same dwelling as the defendant, AS 12.55.155(c)(18). After a thorough analysis of the *Chaney* criteria, Judge Ripley concluded that Pruett was a worst offender. *See State v. Wortham*, 537 P.2d 1117, 1120 (Alaska 1975); *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970). He therefore imposed a maximum twenty-year sentence, providing

that Pruett should not be eligible for parole.

## DISCUSSION

### I. AGGRAVATING FACTORS.

Pruett first argues that the trial court erred in finding aggravating factors and in rejecting a mitigating factor that her conduct constituted the least serious conduct included within the definition of the offense. AS 12.55.155(d)(9). Pruett reasons that she was convicted of recklessly causing serious physical injury to another by means of a dangerous instrument, but was acquitted of intending to cause serious physical injury to another and causing serious injury to that person. In Pruett's view, the jury specifically found that she did not intentionally injure Reichle. Consequently, she concludes, the trial court erred in finding that she was guilty of deliberate cruelty and in rejecting her contention that her conduct must have been among the least serious within the definition of the offense.

We disagree. First, Pruett has misunderstood the offense. The Revised Criminal Code divides the elements of offenses into conduct, circumstances, and results, and generally prescribes a mental state appropriate to the offense. In defining the crime of assault in the first degree, the legislature has looked primarily at the result of the defendant's conduct: serious physical injury. *See* AS 11.41.200. Subdivision one of AS 11.41.200 applies where the defendant recklessly causes the result by means of a dangerous instrument. In contrast, subdivision two of AS 11.41.200 applies where the defendant intentionally causes the result but does not use a dangerous instrument.[4] Since the mental state

3. Generally, a trial court should not enhance a sentence based upon a finding that a defendant "demonstrated an anti-social nature or dangerous propensities posing a clear risk to the public" without the aid of a psychiatric or psychological evaluation of the defendant. *Salud v. State*, 630 P.2d 1008, 1013–14 (Alaska App.1981). Pruett, through counsel, objected to a psychiatric or psychological evaluation and the trial court sustained her objection and did not order one. There is evidence of Pruett's callous inflic-

tion of physical and emotional abuse on Reichle over a substantial period of time, and evidence of her indifference to the health and property of others which supports the trial court's conclusion.

4. Pruett was not charged under subdivision three of AS 11.41.200, which applies where a person intentionally performs an act that results in serious physical injury to another under circumstances manifesting extreme indifference to the value of human life.

"recklessly" governs a result rather than the defendant's conduct, Pruett's argument that the jury verdict established that her conduct was among the least serious contemplated within the definition of the offense must fail.

Pruett was charged with a continuing offense similar to spousal abuse or child abuse. It is not unreasonable for a jury to conclude that a person in Pruett's position might intentionally batter his or her victim by means of an instrument, which might qualify as a dangerous instrument depending on the manner by which it was used, without necessarily intending to cause serious physical injury to the victim. Nevertheless, a jury might conclude that such conduct, particularly where it is continuing, may create a substantial and unjustifiable risk of serious physical injury, such that a finding of first-degree assault would be appropriate. If that were the jury's finding, there would be no inconsistency between a jury finding of recklessness and Judge Ripley's concluding that the conduct, *i.e.*, a continuous course of intentional assaultive behavior, was among the most serious rather than the least serious within the definition of the offense.[5]

Second, before a jury may convict a defendant for an offense, it must find each element of the offense beyond a reasonable doubt. In contrast, a trial court's finding of aggravating factors requires a lesser burden of proof—clear and convincing evidence. Consequently, the trial court is not bound by implicit jury fact-finding in performing its fact-finding responsibilities at sentencing. *See Huckaby v. State,* 632 P.2d 975, 976 n. 2 (Alaska App.1981).

■ The trial court could also find that Pruett's conduct toward Reichle constituted deliberate cruelty, that is, that it involved gratuitously inflicted torture or violence. *See, e.g., Peetook v. State,* 655 P.2d 1308, 1311 (Alaska App.1982). Based upon the evidence, the trial court could find that Pruett deprived Reichle of food and medical treatment despite knowledge of her injuries and illness, that Reichle was skeletal when she left the Pruett house in November 1983, that Pruett, knowing of Reichle's weakened condition, forced Reichle to work from early morning until late at night, and that she would frequently gratuitously assault Reichle. Further, the trial court could find that Pruett engaged in a concerted course of psychological abuse, preventing Reichle's relatives from contacting her, telling Reichle that her children and grandchildren had left Anchorage and did not care to see her, and, that her living son was dead. The trial court's finding of deliberate cruelty was not clearly mistaken.

Pruett argues that there is substantial overlap between the various provisions of AS 11.41.200 and other statutes defining lesser degrees of assault. We agree. Pruett argues that as a result, AS 11.41.200 is void for vagueness or, at the least, deprives her of the equal protection of the law since disparate penalties are provided for comparable conduct. We disagree. In *Hart v. State,* 702 P.2d 651, 659–63 (Alaska App.1985), we rejected the contention that a defendant is denied equal protection if he is convicted of a crime with a greater penalty which has exactly the same elements as another crime with a lesser penalty. *A fortiori,* we find no constitutional violation where the various offenses have precisely the same penalty. Since the various provisions of AS 11.41.200 are merely alternative theories of committing the same offense, it could be argued that a jury would not have to unanimously agree as between the theories. *See State v. James,* 698 P.2d 1161 (Alaska 1985).

We recognize that a person who recklessly causes serious physical injury to another but does not use a dangerous instrument is guilty of assault in the second degree, a class B felony, AS 11.41.210(a)(2). We have previously held that the similarity between AS 11.41.200(a)(1) and AS 11.41.210(a)(2) does not violate the Alaska or United States Constitutions. *See Hart,* 702 P.2d at 659–63. For reasons that will be set out hereafter, we do believe that the close similarity is relevant to sentencing.

5. The significant factors in Pruett's case are the number of separate assaults and the duration of the assaultive behavior. Had the record established a single assault on a single occasion, Pruett's argument that her conduct occupied the borderline between assault in the first degree, AS 11.41.200(a)(1) (recklessly causing serious physical injury with a dangerous instrument) and assault in the second degree, AS 11.41.210(a)(2) (recklessly causing serious physical injury without a dangerous instrument) would be more persuasive and might justify characterization of her offense as among the least serious. *See Braaten v. State,* 705 P.2d 1311, 1324–26 (Alaska App.1985) (Singleton, J., concurring).

■ Pruett next argues that the trial court could not find that her victim was particularly vulnerable. AS 12.55.155(c)(5). We disagree. Substantial evidence supports the trial court's conclusion that Pruett knew or should have known that Reichle was particularly vulnerable and incapable of resistance due to her advanced years (seventy-four at the time of trial), her weakening physical condition, and her difficulties with the English language. Pruett argues that Reichle could easily have avoided Pruett's abuse by going to live with her relatives. Pruett's argument overlooks the substantial evidence that Pruett convinced Reichle that those relatives were unavailable, and that she interfered with efforts by Reichle's relatives to make contact with Reichle.

■ Pruett next argues that Reichle was not a member of the social unit comprised of those living together in Pruett's residence. AS 12.55.155(c)(18). She argues that this factor should be limited to spouses and children. We rejected similar reasoning in *Komakhuk v. State*, 719 P.2d 1045, 1048 (Alaska App.1986). The trial court's finding that Reichle and Pruett were members of the same household was not clearly erroneous.[6]

## II. THE APPROPRIATE PRESUMPTIVE TERM.

■ Pruett next argues that the trial court improperly relied upon the seven-year presumptive sentence rather than the five-year presumptive sentence in sentencing her. *See* AS 12.55.125(c)(1) & (2). The state argues in part that Pruett's challenges to the seven-year presumptive term are inappropriate because the trial court found aggravating factors and imposed a maximum twenty-year sentence without possibility of parole. Inferentially, the state would appear to reason that any distinction between the five-year presumptive term and the seven-year presumptive term would be irrelevant to Pruett's sentence, *i.e.*, would be harmless error in this case. *But see Deal v. State*, 587 P.2d 740, 741 (Alaska 1978) (rejecting a similar harmless error argument). Our conclusion that Pruett's total sentence is excessive and that she will have to be resentenced dictates that we should address this argument at this time.

Essentially, Pruett argues that the legislature did not intend the seven-year presumptive term to apply to those who recklessly cause serious physical injury, whether or not a dangerous instrument is used. In Pruett's view, the seven-year presumptive term should be limited to those who intentionally cause serious physical injury. In *Komakhuk*, 719 P.2d at 1047–48, we implicitly approved the imposition of a seven-year presumptive term on a person convicted under AS 11.41.200(a)(1). However, other decisions of this court cast doubt on the appropriateness of applying a seven-year presumptive term in such a case. *See Krasovich v. State*, 731 P.2d 598 (Alaska App.1987); *New v. State*, 714 P.2d 378 (Alaska App.1986).

In *New*, we recognized that the legislature had apparently applied a five-year pre-

---

**6.** Pruett also challenges the trial court's finding that she has a criminal history consisting of repeated instances of assaultive behavior. AS 12.55.155(c)(8). We agree. Evidence presented at the sentencing hearing certainly establishes that Pruett would be resistive to rehabilitation. Generally, however, the evidence established fraudulent behavior rather than violent behavior. The single incident regarding Theodore Dieke, while outrageous, hardly constituted a history of assaultive behavior. Another incident involved undue influence exerted on another older woman to obtain money. It is alleged that Pruett drugged this woman. The state contends that "drugging" someone constitutes assaultive behavior. This may be true in the abstract but the Dieke incident, the alleged drugging and Pruett's apparent willingness to discuss the murder of Terry Park do not constitute a criminal history of repeated incidents of assaultive behavior. While the state charged Pruett with a continuous course of conduct regarding Reichle, it would not appear appropriate to find this aggravating factor based primarily upon the charged offense. In any event, we have approved Judge Ripley's conclusion that Pruett's conduct was among the most serious contemplated within the definition of the offense because it was repetitive. AS 12.55.155(c)(10). To the extent that he determined that Pruett had a history of assaultive behavior, based primarily upon the charged offense, this determination merges with his conclusion that Pruett's conduct was among the most serious and should not be given independent weight in determining an appropriate sentence for Pruett.

sumptive term to manslaughter where a defendant recklessly causes his victim's death, but a seven-year presumptive term for assault in the first degree where the defendant recklessly causes his victim serious physical injury by means of a dangerous instrument. 714 P.2d at 382. We traced the history of this anomaly and concluded that the legislature had initially exempted manslaughter from a presumptive term for first offenders convicted of class A felonies where the assailant used a dangerous instrument or caused serious physical injury. *Id.* at 383.

The legislature noted that there were a variety of ways in which a manslaughter could occur, *i.e.*, intentionally, knowingly, or recklessly; whereas assault in the first degree, which was subject to the presumptive term for first offenders, generally required an intent to cause serious physical injury. Thereafter, the legislature amended the statute in two respects. First, it provided a five-year presumptive term for all first offenders convicted of class A felonies, and increased the prior presumptive term for aggravated first-felony convictions from six years to seven years, continuing to exempt manslaughter from the enhanced presumptive term. At the same time, the legislature amended assault in the first degree by providing that recklessly causing serious physical injury by means of a dangerous instrument also constituted first-degree assault. The sole explanation which the legislature gave for this change was the desire to prevent a defendant charged with assault in the first degree from claiming intoxication as a defense. *See* Criminal Division, Alaska Department of Law, *Criminal Law Manual,* 3–32, (1985).

After tracing the history of these statutes, we concluded that in order to avoid "manifest injustice" referral to the three-judge panel for sentencing was mandatory where a defendant both recklessly killed one victim and recklessly injured another by means of the same dangerous instrument. *See New,* 714 P.2d at 384 (an automobile). In reaching our conclusion we said:

> We recognize that it might be possible to avoid the need for referral to the three-judge panel [in every case] by simply construing the increased first-offense presumptive term specified by AS 12.55.-

125(c)(2) to be inapplicable in any case where the defendant's conviction is based on proof of reckless conduct. New has not argued for such a construction of the statute, however, and we therefore decline to consider the possibility in this case.

*Id.* at 384 n. 5.

In *Krasovich,* we concluded that it was theoretically possible to commit manslaughter without using a dangerous instrument. 731 P.2d at 600. But, we also recognized that in virtually all manslaughters, a dangerous instrument would be involved. *Id.* at 601. We are satisfied that similar conclusions could be reached regarding assault. It is possible to recklessly cause serious physical injury without using a dangerous weapon, AS 11.41.-210(a)(2), but given the broad definition of dangerous instrument in the Alaska Code it is unlikely that this will happen often. *See Wettanen v. State,* 656 P.2d 1213 (Alaska App.1983). The line between the instant offense, AS 11.41.200(a)(1), and assault in the second degree, AS 11.41.210(a)(2), is very thin. Since assault in the second degree is a class B felony, a comparison between the two offenses strengthens the conclusion that the legislature did not intend the larger presumptive term to apply to a reckless infliction of serious physical injury, even though the injury was inflicted with a "dangerous weapon."

Based upon *New* and *Krasovich,* we conclude that the legislature could not have intended the seven-year presumptive term to apply to those who recklessly commit assault in the first degree, but only a five-year presumptive term to those who, under identical circumstances, kill their victim. *See Sherman v. Holiday Construction Co.,* 435 P.2d 16, 19 (Alaska 1967) (statute should be construed to avoid absurd results). We therefore conclude that the legislature intended that Pruett and those similarly situated would be subject to the five-year presumptive term rather than the seven-year presumptive term.[7] AS 12.55.-125(c)(1).

## III. WAS PRUETT'S SENTENCE EXCESSIVE?

Pruett next argues that her sentence (twenty years without possibility of parole) is excessive. We agree.

---

7. "Recklessness" amounting to "extreme indifference to the value of human life" occupies the borderline between reckless and purposeful or intentional conduct. *See Neitzel v. State,* 655 P.2d 325, 335–38 (Alaska App.1982). We express no opinion regarding which presumptive term is applicable when a defendant is convicted under AS 11.41.200(a)(3).

■ The jury rejected Pruett's defense and found her guilty of very serious conduct. The trial court reached similar conclusions and in addition found, among others of less overall significance, two significant aggravating factors: that Pruett engaged in deliberate cruelty, AS 12.55.155(c)(2); and, that her conduct, due to its protracted nature, was among the most serious within the definition of her offense, AS 12.55.155(c)(10). However, a finding of aggravating factors, while necessary to aggravate a sentence, does not automatically warrant an enhanced sentence. *Krasovich*, 731 P.2d at 600; *State v. Andrews*, 707 P.2d 900, 911 (Alaska App.1985), *aff'd*, 723 P.2d 85 (Alaska 1986). The court must consider the aggravating factors established in light of the *Chaney* factors: rehabilitation, personal and general deterrence, reaffirmation of community norms and, where appropriate, isolation. *Chaney*, 477 P.2d at 443–44. In this regard it is wise to remember that a sentence in the five- to ten-year range will virtually always satisfy the *Chaney* criteria. *See Donlun v. State*, 527 P.2d 472, 475 (Alaska 1974) (considering applicable ABA Standards, and concluding that except for cases involving particularly serious offenses, dangerous offenders and professional criminals, maximum terms ought not to exceed five years); *see also Pascoe v. State*, 628 P.2d 547, 550 (Alaska 1980) (noting a modification to the ABA Standards which suggests that a maximum ten-year sentence should rarely be exceeded and that, normally, a five-year sentence should not be exceeded).

■ Characterization as a dangerous offender or professional criminal requires a substantial criminal record, usually involving two felony convictions within the five years preceding the offense for which the defendant is being sentenced, and at least one full year of prior imprisonment. *See State v. Graybill*, 695 P.2d 725, 729–30 (Alaska 1985); *Andrews*, 707 P.2d at 917. *Cf. Stobaugh v. State*, 614 P.2d 767, 773–74 (Alaska 1980). Despite her history of fraudulent behavior, and suggestions in the record of her willingness to engage in violence and to contemplate homicide, Pruett does not belong in the category of dangerous or professional criminals.[8] *See Viveros v. State*, 633 P.2d 289, 291 (Alaska App.1981). We recognize that her conduct may meet the supreme court's test for "particularly serious offenses" permitting a sentence in excess of five years. *Cf. Sevier v. State*, 614 P.2d 791, 794–95 and n. 10 (Alaska 1980); *State v. Afcan*, 583 P.2d 849, 851 (Alaska 1978); *Creed v. State*, 573 P.2d 1379 (Alaska 1978).

Nevertheless, the supreme court has suggested that a long prison sentence should not be imposed for purposes of rehabilitation and has implied that even in a case of reckless murder a sentence of up to ten years will adequately address the sentencing goals of general deterrence and reaffirmation of community norms. *Pears v. State*, 698 P.2d 1198, 1204–05 (Alaska 1985). Sentences of ten years or more for conduct equivalent in seriousness to class A felonies under current law have generally been based on isolation as a goal of sentencing and have been reserved for those with a proven record of recidivism, or those whose conduct involved premeditated attempts to kill or seriously injure. *See, e.g., Sielak v. State*, 581 P.2d 226 (Alaska 1978); *Fox v. State*, 569 P.2d 1335 (Alaska 1977); *Burleson v. State*, 543 P.2d 1195 (Alaska 1975).

We do not mean to minimize the seriousness of abuse of the elderly or the related crimes of spousal abuse and child abuse. Such crimes customarily involve repeated assaults on helpless victims, frequently under circumstances manifesting deliberate cruelty. Such was the case here. We believe, however, that enhancement of the five-year presumptive term by an additional five years' incarceration and five more suspended years will recognize the aggravating factors found, without creating the disparity that the legislature sought to avoid by enacting presumptive sentencing.

As we have noted, Pruett's relationship and assaultive behavior regarding Reichle are analogous to cases of spousal or child abuse where the assailant batters the victim over a long period of time without intending to seriously injure the victim, but

---

**8.** Judge Ripley obviously considered Pruett dangerous. Viewed as a question of fact, the record would support such a characterization. In context, however, the term "dangerous" is a term of art referring only to those with significant past criminal convictions. *See Andrews*, 707 P.2d at 917. The courts of Alaska have always distinguished between past criminal behavior and past criminal convictions in determining whether a person should receive a maximum sentence; it is only the latter, particularly where a substantial period of imprisonment is actually served, which tests a defendant's amenability to personal deterrence and rehabilitation. *See Skrepich v. State*, 740 P.2d 950 (Alaska App. 1987); *State v. Rastopsoff*, 659 P.2d 630, 634–35 (Alaska App.1983).

does so nonetheless. Consequently, our recent decision in *Rhodes v. State*, 717 P.2d 422 (Alaska App.1986), is particularly persuasive. Rhodes was convicted of assault in the first degree, AS 11.41.200(a)(3) (performing an act which resulted in serious injury to another under circumstances manifesting extreme indifference to the value of human life). The charge stemmed from injuries to Rhodes' six-week-old daughter who suffered a skull fracture while in Rhodes' care. The trial court imposed a sentence of fifteen years' imprisonment. Rhodes was a first-felony offender and had a criminal record consisting of two prior convictions for driving while intoxicated. The trial court's decision to substantially enhance Rhodes' sentence was based on its conclusion that Rhodes was responsible for the death of his son who died under circumstances and from injuries substantially similar to those suffered by his daughter. We concluded that the trial court had placed undue emphasis on the son's death, even though it was appropriate to consider it. In our view, this evidence, though relevant, was insufficient to sentence a first-felony offender to a sentence which was equivalent to the presumptive sentence for a third-felony offender. We therefore reduced Rhodes' sentence to ten years, the presumptive sentence for a second-felony offender. 717 P.2d at 427–28.

In this case, Judge Ripley relied on evidence that Pruett had conspired in the death of her former husband, Theodore Dieke, and, in addition, had apparently engaged in theft offenses and suborned perjury. We agree that this evidence, construed in light of the aggravating factors that Judge Ripley properly found, warranted an aggravated sentence in this case. But, as in *Rhodes*, actual incarceration should not exceed ten years, the presumptive sentence for a second-felony offender. *Austin v. State*, 627 P.2d 657, 657–58 (Alaska App.1981) (a first-felony offender

should normally receive a more favorable sentence than the presumptive sentence for a second-felony offender; this rule should be violated only in exceptional cases).[9] *See also Jacko v. State*, 689 P.2d 506, 507 (Alaska App.1984) (Jacko convicted of two counts of second-degree assault, received two five-year concurrent sentences; case remanded for imposition of sentence not to exceed four years, despite prior traffic violation and serious injuries suffered by victims, because Jacko was first-felony offender whose case was not exceptional); *Kimbrell v. State*, 647 P.2d 618 (Alaska App.1982) (ten years with three years suspended for first-felony offender convicted of second-degree assault under former law, based on theory that he recklessly caused serious physical injury to another person by means of a dangerous instrument, was not justified).

Our conclusion also finds support in the various studies of sentencing performed by the Alaska Judicial Council. The mean term imposed during 1974–1976 for assault with a dangerous weapon was fifteen and four-tenths months, and the median sentence was only four months. *See Creer v. State*, 600 P.2d 1095, 1096 n. 3 (Alaska 1979). Subsequent studies showed an increase in typical sentences for violent offenses; the mean sentence for violent offenses between 1976 and 1979 varied between fifty-five and forty-eight months. *See* Alaska Judicial Council, *Alaska Felony Sentences: 1976–79*, 20 (1980). The onset of presumptive sentencing further increased typical sentences to some extent. Of twelve persons sentenced for assault in the first degree, recorded in 1984, two received sentences between twelve and twenty-four months, four received sentences between twenty-four and sixty months, four received sentences between sixty and ninety-six months, and two received sentences of over ninety-six months. *See* Alaska Ju-

---

**9.** If the trial court finds aggravating factors or extraordinary circumstances, it may impose a sentence on a first offender equal to or greater than the presumptive sentence for a second offender. *Brezenoff v. State*, 658 P.2d 1359, 1362 (Alaska App.1983). In two cases where a first offender was convicted of a class B felony, and the trial court found aggravating factors, we have permitted an aggravated sentence equivalent to the presumptive term for a third-time class B felony offender. *See, e.g., Skrepich v. State*, 740 P.2d 950, 956–57 (Alaska App.1987); *Maal v. State*, 670 P.2d 708, 712 (Alaska App. 1983). Pruett, however, was subject to a five-year presumptive term as a first offender.

Thus, aggravating factors were necessary to increase her sentence to ten years, the presumptive term for a second felony offender convicted of a class A felony. In our view, the aggravating factors found when compared to other aggravated cases of first-degree assault, warrant a sentence of actual incarceration equal to but not in excess of the presumptive term for a second felony offender. Such a sentence might properly include additional suspended time of not more than five years, permitting a total sentence of fifteen years with five years suspended, approximating the presumptive term for a third time class A felony offender. *See* cases cited *infra*, note 10.

dicial Council, *Alaska Felony Sentences: 1984*, A.2 (1987). The judicial council studies demonstrate convincingly that the overwhelming majority of those convicted of

violent felonies, including aggravated cases, received sentences calling for substantially less than ten years' imprisonment.[10]

10. Our conclusion that Pruett's sentence should not exceed ten years of actual incarceration also finds support in reported cases discussing comparable crimes. We recognize that viewed in isolation, most of these cases could be distinguished from Pruett's case. Many of the defendants had a record of criminal convictions for violent offenses. Pruett does not. On the other hand, many of the defendants were sentenced for a single assault while Pruett's conduct involved numerous assaults over an extended period of time. As we have noted Pruett's offense is more akin to child abuse or spousal abuse than it is to the typical assault on a stranger. Admittedly, Alaskan courts have not reviewed sentences imposed in a great number of cases of child and spousal abuse. Finally, most of the cases discussed in this footnote involved former AS 11.15.220, assault with a dangerous weapon (ADW), which had a maximum penalty of ten years. Pruett, in contrast, was convicted of a class A felony with a maximum penalty of twenty years. Few defendants actually received maximum terms, however, and the sentences they received give some indication of the trial courts treatment of comparable conduct. Recent cases discussing sentences under AS 11.41.200 reflect similar sentences. We stress that it is an examination of all sentences involving similar crimes which is significant and not the sentence imposed in any single case. *See Kagak v. State*, 624 P.2d 818 (Alaska 1981) (defendant who had previously been convicted of an armed robbery and had threatened an intervening police officer with a handgun, brandished a shotgun at one victim and shot another; he was convicted of shooting with intent to wound under former AS 11.15.150 (maximum penalty twenty years) and ADW; the supreme court affirmed a fifteen-year sentence); *Sevier v. State*, 614 P.2d 791 (Alaska 1980) (defendant was convicted of two counts of ADW and received a maximum ten-year sentence; the supreme court found that his assault was vicious and premeditated but left no permanent injury; it noted that the defendant showed no remorse and had been implicated in approximately thirty arsons; the sentence was affirmed); *Cochrane v. State*, 611 P.2d 61 (Alaska 1980) (the defendant was convicted of two counts of rape and two counts of ADW and received two concurrent twelve-year sentences for the rapes and two five-year concurrent sentences for the ADW convictions; the court noted the viciousness of the assaults and affirmed); *Holmes v. State*, 604 P.2d 248 (Alaska 1979) (while intoxicated fifty-eight-year-old Holmes fired a gun through a window to scare a female friend into returning a T.V. set; he hit her in the arm; he was convicted of ADW; the supreme court affirmed a two-year sentence finding a good background but an alcohol problem); *Kraus v. State*, 604 P.2d 12 (Alaska 1979) (defendant was convicted of ADW and received an eight-year sentence with no possibility of parole until one-third was served; twenty-year-old Kraus stabbed a friend with a knife; he had a bad psychiatric report showing an antisocial personality, a juvenile conviction for ADW and ten misdemeanor convictions including assaultive behavior; the supreme court affirmed); *Creer v. State*, 600 P.2d 1095 (Alaska 1979) (Creer shot another person with a handgun and received a five-year sentence for ADW; Creer had six misdemeanor convictions including two for assault and brandishing a weapon; he was somewhat paranoid and impulsive; the supreme court affirmed the five-year sentence); *Cooper v. State*, 595 P.2d 648 (Alaska 1979) (thirty-four-year-old defendant received an aggregate thirty-year sentence for three counts of ADW; the supreme court found thirty years too severe and remanded for resentencing not to exceed fifteen years of imprisonment; Cooper had three prior felony convictions for nonviolent offenses, was a chronic alcoholic and threatened three policemen with a handgun); *Ferguson v. State*, 590 P.2d 43 (Alaska 1979) (eighteen-year-old Ferguson, with two others, robbed a bar at gunpoint; Ferguson carried a loaded shotgun; during their flight from the scene, the group was overtaken by Alaska State Troopers and a gun battle ensued; Ferguson was charged with robbery, attempted robbery, and ADW; he received respective concurrent sentences of fifteen years, seven years and ten years; in affirming these sentences the supreme court stressed the gang nature of the crime, the use of a weapon to threaten the victims and shooting at police officers, as well as Ferguson's poor juvenile record; the court expressly found Ferguson to be a worst offender); *Marsden v. State*, 589 P.2d 863 (Alaska 1979) (twenty-year-old defendant beat another victim with a pool cue, mistakenly believing that the victim owed him money, the supreme court affirmed a sentence of four years with two years suspended, noting that Marsden had a substantial misdemeanor record including a conviction for assaultive behavior); *Mill v. State*, 585 P.2d 546 (Alaska 1978), *cert. denied*, 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979) (Mill, who had no prior criminal record, shot his victim with a rifle over a business dispute, his sentence of five years with four years suspended for ADW was affirmed against Mill's claim that it was too severe and the state's claim that it was too lenient); *State v. Afcan*, 583 P.2d 849 (Alaska 1978) (Afcan was convicted of two counts of ADW; Afcan caused a disturbance in the residence of a woman friend; a police officer intervened and a scuffle ensued in which Afcan stabbed the police officer and the woman, causing minor wounds; he received five-year concurrent sentences, which were affirmed on appeal against the state's challenge that they were too lenient and Afcan's claim that they were too severe; Afcan had a prior criminal record of twenty-three misdemeanor offenses

involving disorderly conduct, assault and battery, and other alcohol-related offenses; he was on probation at the time he committed these offenses; the court indicated a willingness to approve sentences in excess of five years for truly dangerous offenders, but concluded that Afcan was a drunk acting on the passions of the moment who could not be characterized as a worst offender); *Sielak v. State,* 581 P.2d 226 (Alaska 1978) (the supreme court affirmed a ten-year sentence for ADW where Sielak attacked his wife with a knife; the court found that forty-one-year-old Sielak had a history of convictions for assaultive behavior including three prior felony convictions for ADW, and a severe alcohol problem); *Menard v. State,* 578 P.2d 966 (Alaska 1978) (Menard was convicted of ADW; he stabbed an acquaintance three times during a fight; the court affirmed a four-year sentence with two suspended for Menard who was apparently a first offender); *Creed v. State,* 573 P.2d 1379 (Alaska 1978) (Creed was convicted of attempted robbery and shooting with intent to kill, wound and maim; he received concurrent sentences of five years for the attempted robbery and ten years for the shooting; Creed, nineteen years old, had no prior criminal conviction; he shot a grocery store clerk five times and when unsuccessful in opening the cash register, he threatened to shoot the clerk again; the supreme court affirmed the sentences [Note: shooting with an intent to kill had a maximum twenty-year sentence] ); *Fox v. State,* 569 P.2d 1335 (Alaska 1977) (twenty-one-year-old Fox was convicted of robbery and shooting with intent to kill, wound or maim; he received respective concurrent sentences of seven years and twenty years; Fox robbed a drive-in restaurant at gun point; he fired a shot at close range at a police officer who was trying to apprehend him; the officer was not hit; Fox was wounded in the abdomen by the officer's return fire; the court found Fox to be a worst offender because he initiated a gun battle by shooting at a police officer who was engaged in the performance of his duty; the court affirmed the sentence); *Walton v. State,* 568 P.2d 981 (Alaska 1977) (while intoxicated, Walton engaged in a premeditated knife attack; the court approved a seven-and-one-half year sentence for the ADW); *Hoover v. State,* 568 P.2d 404 (Alaska 1977) (Hoover, in an unprovoked assault, stabbed a man, whom he had just met, in the abdomen; he was convicted of ADW and received a five-year sentence; the supreme court affirmed noting that Hoover had two prior ADW convictions, one as a juvenile and one as an adult, and additional adjudications for burglary, driving under the influence of drugs, joyriding, and a series of probation and parole violations; the court also noted a psychiatric report indicating that Hoover had a number of psychological problems aggravated by frequent alcohol abuse and an inability to control violent impulses); *Dawson v. State,* 557 P.2d 142 (Alaska 1976) (Dawson, a first-felony offender, received a five-year sentence for ADW; the sentence was affirmed on appeal; apparently Dawson fired a gun into a vehicle injuring two of the passengers); *Bailey v. State,* 548 P.2d 373 (Alaska 1976) (twenty-two-year-old Bailey shot his victim in the leg during a scuffle between two opposing groups, he received a sentence of six years with three years suspended for the ADW; he had one prior nonviolent felony; the supreme court affirmed); *Joe v. State,* 542 P.2d 159 (Alaska 1975) (Joe was convicted of ADW for stabbing his victim with a knife; he received a maximum ten-year sentence; the record reflects eight prior felony convictions; the supreme court affirmed); *Crow v. State,* 517 P.2d 756 (Alaska 1973) (Crow, who had spent eight of the past ten years in jail and had eighty-one misdemeanor convictions including numerous assault and battery convictions, received a sentence of five years with two years suspended, which was affirmed on appeal, for an ADW; in light of this record the supreme court approved his sentence despite the fact that Crow was a first-felony offender); *Nielsen v. State,* 492 P.2d 122 (Alaska 1971) (without provocation Nielsen stabbed his victim with a butcher knife and was convicted of ADW; the supreme court affirmed his sentence of three years); *State v. Armantrout,* 483 P.2d 696 (Alaska 1971) (the supreme court disapproved as too lenient a three-year suspended sentence for ADW; apparently, the twenty-three-year-old offender severely assaulted his victim with a tire iron in the course of a robbery; the victim suffered serious physical injuries and could have died); *Rhodes v. State,* 717 P.2d 422 (Alaska App.1986) (vacated as too severe, a fifteen-year sentence for a first offender convicted of assault in the first degree; on remand sentence not to exceed ten years); *Richey v. State,* 717 P.2d 407 (Alaska App.1986) (Richey assaulted his girlfriend and was convicted of assault in the second degree; the trial court found one aggravating factor, that the victim was a member of Richey's household, and sentenced Richey, a second-felony offender, to six years with two years suspended, two years over the presumptive four years for a second-felony offender; the court affirmed); *Dyer v. State,* 666 P.2d 438 (Alaska App.1983) (the court affirmed an eight-year sentence for ADW; defendant was fifty-one years old and had three prior felony convictions; he was diagnosed as having a schizoid personality); *Neakok v. State,* 653 P.2d 658 (Alaska App.1982) (court affirmed sentence of ten years with five years suspended for second-degree assault); *Kimbrell v. State,* 647 P.2d 618 (Alaska App.1982) (court vacated, as too severe, a seven-year sentence for assault in the second degree under the same theory for which Pruett was convicted); *State v. Ahwinona,* 635 P.2d 488 (Alaska App.1981) (court disapproved as too lenient a sentence of five years with three years suspended for ADW, concluding that a minimum four years' incarceration was required in light of Ahwinona's prior history of assaultive behavior including a manslaughter conviction and history of drunken violence); *Schroff v. State,* 627 P.2d 653 (Alaska App.1981) (nineteen-year-old defendant received

A sentence of fifteen years with five suspended which is equal to twice the applicable presumptive term in years to serve, will adequately reflect the seriousness of Pruett's conduct and the aggravating factors found. It will also provide an incentive to Pruett to refrain from criminal behavior when she is released from prison. It will also be more in line with sentences imposed in the past for aggravated instances of assault in the first degree where the defendant had no prior history of criminal convictions for assaultive behavior.[11]

The sentence of the superior court is VACATED and this case REMANDED for resentencing.

### IT IS ORDERED:

1. [The Editor's Note: The Court granted in part appellant's petition for rehearing and set forth the text of a new footnote 9 that it ordered to be substituted for the original footnote. The substitution has been made in the Court's Opinion.]

2. Both the state and Pruett request that this court address Judge Ripley's determination that Pruett not be eligible for parole during her twenty-year sentence.

We decline to do so. Our decision vacating Pruett's sentence and remanding for resentencing will give the parties an opportunity to present their various contentions regarding parole eligibility to the trial court. The parties may, if they wish, argue the applicability of the amendments to the parole act contained in ch. 88 SLA 1985. They may also discuss the applicability of past cases determining the propriety of parole restrictions. *See, e.g., Qualle v. State,* 652 P.2d 481, 486 (Alaska App.1982); *Spencer v. State,* 642 P.2d 1371, 1377 (Alaska App. 1982). *See also Gullard v. State,* 497 P.2d 93, 94 (Alaska 1972). The trial court could then rule on the issue and set out its reasons. *Jackson v. State,* 616 P.2d 23, 25 (Alaska 1980). Until the issue has been presented to the trial court and an informed ruling made, we believe consideration by us of Pruett's parole eligibility to be premature.

3. In all other respects, the appellant's petition for rehearing is denied.

4. The petition for rehearing by the appellee is denied.

two seven-year concurrent sentences for ADW; he had a prior felony conviction and a bad juvenile record; the court affirmed).

Consideration should also be given to sentence review of related crimes. In *Putnam v. State,* 600 P.2d 1096 (Alaska 1979), the court affirmed a sentence of fifteen years with three years suspended and an eight-year limitation on parole consideration where the twenty-six-year-old defendant was convicted of armed robbery (maximum fifteen-year sentence). He had two prior armed robbery convictions as well as an extensive misdemeanor record, including assault and battery convictions, and was a heroin addict. In *Polly v. State,* 706 P.2d 700 (Alaska App.1985), the defendant was convicted of three counts of sexual assault in the first degree, when it was a class A felony. *See* former AS 11.41.450. The court reversed, as too severe, a forty-year sentence with twenty years suspended, concluding that a maximum sentence in the range of ten to fifteen years should be imposed.

11. A maximum sentence requires a finding that the defendant is a worst offender. *Wortham,* 537 P.2d at 1120. Such a finding normally requires proof that a defendant is a hardened criminal based on a history of prior criminal

convictions. *See Kelly v. State,* 622 P.2d 432, 439 (Alaska 1981). A finding that a defendant's offense is among the most serious within its class, AS 12.55.155(c)(10), standing alone would not justify a worst offender characterization. *See Brezenoff,* 658 P.2d at 1363. While a finding that a person has an antisocial personality making her particularly dangerous may support a worst offender designation even in the absence of a criminal record (*Salud,* 630 P.2d at 1013–14) and such a finding was made here and was not clearly erroneous, before approving a maximum sentence, Alaska courts have additionally required a premeditated offense where a defendant intentionally caused death or serious physical injury. *See Fox,* 569 P.2d at 1337 (gunbattle with police); *Burleson,* 543 P.2d at 1201 (defendant hired another to maim wife and her boyfriend with acid); *Dulier v. State,* 511 P.2d 1058, 1061 (Alaska 1973) (defendant coerced companions into beating another person to death). A bad psychological diagnosis standing alone, in the absence of a premeditated crime of violence or a history of recidivism, should not result in a worst offender designation. *See Maal v. State,* 670 P.2d 708, 711–12 (Alaska App.1983) (suggesting that sentencing judges should not give undue weight to adverse psychological reports that predict future recidivism).