Larry SEVIER, Appellant,

v.

STATE of Alaska, Appellee.

No. 4632.

Supreme Court of Alaska.

July 18, 1980.

Jane F. Kauvar, Asst. Public Defender, Fairbanks, Brian Shortell, Public Defender, Anchorage, for appellant.

Thomas M. Jahnke, Asst. Atty. Gen., Juneau, Harry L. Davis, Dist. Atty., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

**PER CURIAM.**

Larry Sevier was convicted by a jury of two counts of assault with a dangerous weapon in violation of AS 11.15.220[1] and one count of assault while armed in violation of AS 11.15.190.[2] He was sentenced to three concurrent ten year terms and now appeals both the convictions and the sentence.

All three convictions arose from an incident which occurred in the early morning hours of June 9, 1978. On the previous evening, Sevier saw Melissa Bidwell, with whom he had lived until three weeks earlier, at a Fairbanks lounge. He offered to buy her a drink and asked her to dance, but she refused. They briefly discussed a subpoena that Bidwell had received which she felt probably related to an arson investigation in which two of Sevier's friends were suspects. When Bidwell's cousin, who was with her, asked her to dance, Sevier punched him in the stomach. Bidwell left the lounge with her sister and went to the police department to ask for help, but the police said they could do nothing to keep Sevier away from her. The two women stayed out until about 4 a. m. without running into Sevier again.

Bidwell then went to pick up her five year old son, Michael, from the babysitter, and returned to her apartment. After sending the boy to bed, she fixed herself a sandwich, changed into her pajamas, and went into her bedroom. A few minutes later, Sevier entered the room, holding a

---

1. AS 11.15.220 provides:
   *Assault with dangerous weapon.* A person armed with a dangerous weapon, who assaults another with the weapon, is punishable by imprisonment for not more than 10 years nor less than six months, or by a fine of not more than $1,000 nor less than $100, or by both.

   In its recent revision of the criminal statutes, the state legislature repealed this section, effective January 1, 1980. Ch. 166, § 21, SLA 1978. The conduct proscribed in the former section is now covered by AS 11.41.200–.230.

   Sevier was convicted of two counts of assault with a dangerous weapon: one for pointing the loaded gun at Bidwell and the other for beating her with the gun.

2. AS 11.15.190 provides:
   *Assault while armed.* A person who unlawfully assaults or threatens another in a menacing manner, or unlawfully strikes or wounds another, having at the time in his possession a dangerous weapon, with intent to prevent the other person from resisting or defending himself, is punishable by imprisonment for not more than 10 years nor less than one year, or by a fine of not more than $1,000 nor less than $100, or by both.

   This section was also repealed by ch. 166, § 21, SLA 1978, effective January 1, 1980, during the state legislature's recent revision of the criminal statutes. The conduct proscribed is also now covered by AS 11.41.200–.230.

   Sevier was convicted on this charge for beating Bidwell with his fists while armed.

gun which he pointed at her.[3] According to Bidwell, Sevier said that she should have talked to him at the lounge, and that "if he couldn't have [her], no one was going to have [her]." With the gun still pointed at Bidwell, Sevier pulled the trigger, but nothing happened. He then said that "[t]he next one was it." Bidwell leapt at Sevier to try to get the gun away from him, but failed. Sevier threw her to the floor and began to beat her with his fists and the gun. Bidwell said that he struck her fifteen or twenty times until she could no longer breathe, and that "there was blood everywhere."

Sevier stopped the beating when Michael, apparently wakened by his mother's screams, entered the room. Sevier got a washcloth and cleaned Bidwell's face and told her to lie down. He asked her if he could stay, to which she agreed only because she was afraid that her refusal would anger him again. He lay down on the bed beside her with his arm draped across her and stayed until 8 or 9 a. m., during which time she slept intermittently. Sevier then apologized for his conduct and offered to take Bidwell to the hospital, but she declined. Bidwell wanted to go to see her mother because she was a nurse and could look at her injuries, but Sevier refused because he felt this would embarrass him and started to get angry. Sevier finally allowed Bidwell to leave by herself when she compromised by agreeing to go to her doctor. Instead, she went to her sister's and called

the state troopers. When she returned to her apartment with a trooper, Sevier was gone. He was arrested later the same day, and convicted after a trial held in January 1979.

Sevier's principal claim of error in this appeal involves the admission into evidence, over his objection,[4] of testimony relating to an arson investigation focusing on two of his close friends.[5] He argues that the testimony concerning the investigation was prejudicial, and therefore should have been excluded.

■ Evidence that is potentially prejudicial to a defendant should be allowed only if its probative value outweighs its prejudicial effect. *Eubanks v. State*, 516 P.2d 726, 729 (Alaska 1973). The weighing of relevancy and prejudice is committed to the discretion of the trial judge, who will be reversed only for an abuse of that discretion. *Frink v. State*, 597 P.2d 154, 169–70 (Alaska 1979).

■ Sevier contends that there was no evidence to show that he assaulted Bidwell in order to keep her from testifying at the grand jury investigation of his friends. The state, on the other hand, argues that in order to introduce this evidence it need not establish with certainty that Sevier's assault was motivated by a desire to protect his friends. This is true. In the instant case, however, the state's theory of Sevier's motivation appears to have been complete

---

3. Bidwell testified that she heard no door close and that she had locked the door behind her, so she concluded that Sevier was already in the apartment when she arrived home.

4. The state argued in their brief that Sevier did not raise this issue below and therefore may not assert this point on appeal. We find that he did sufficiently object to the introduction of this testimony to preserve the issue for appeal.

5. The most damning testimony in this respect came from Bidwell:

    Q. Now, did Larry Jack [Sevier] ever have any conversation with you about the investigation of Sloan and Davis [his close friends suspected of arson]?

    A. Yes.
    Q. In what connection?

    A. He told me that I didn't have to answer the questions that I was being asked; that the reason they were harassing me was because I was being too cooperative. And I

    . . . . .

    Q. Who was—didn't have to answer who's questions?
    A. The police.
    Q. Did he encourage you or discourage you to cooperate?
    A. Well, he told me not to.
    It is unclear who Bidwell was referring to as harassing her, but it would be reasonable to presume that she meant Sloan and Davis.

    Further testimony on the investigation of Sevier's friends and the subpoena served on Bidwell came from her sister and from a state trooper with the investigations unit.

speculation. The state's evidence overwhelmingly indicated that Sevier was motivated solely by jealousy. Bidwell did not testify that Sevier once referred to the arson investigation during her five hour ordeal, and neither she nor any other witness said that Sevier became at all upset when she mentioned receiving the subpoena. In light of these facts we feel that the testimony relating to the arson investigation had little probative value and could potentially have been prejudicial.[6] Although the jury was apprised of the fact that Sevier was not himself connected to the arson, and was told that no finding of motive was necessary to convict, we must conclude that the trial judge abused his discretion in admitting such evidence.

■ Although admission of the evidence was in error, it was harmless error. The standard for determining whether errors not involving a constitutional right are harmless is "whether we can fairly say that the error did not appreciably affect the jury's verdict." *Love v. State*, 457 P.2d 622, 634 (Alaska 1969). In the instant case, the prosecution's case against Sevier was strong despite the challenged evidence, and Sevier offered no witnesses in his behalf. Furthermore, the prejudicial effect of the arson testimony was not extreme. In conclusion, we find that "the judgment was not substantially swayed by the error." *Id.* at 631, quoting *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557, 1567 (1946).

Sevier's second assertion of error is that Michael Bidwell, the victim's son who at the time of trial was six years old, was not competent to testify. In support of this argument, he points to the fact that there were inconsistencies in Michael's testimony.

■ What is important under the general test of a witness' competency to testify is that the witness be capable of expressing himself so as to be understood by the court and jury, and recognize the duty to tell the truth. Rule 601, Alaska R.Evid. The trial court is given great discretion in determining the competency of a child to testify. *McMaster v. State*, 512 P.2d 879, 881 (Alaska 1973). *See also* C. McCormick, Law of Evidence § 62, at 140–41 (2d ed. 1972). Before permitting a young child to testify the trial judge must ascertain that the child is capable of receiving just impressions of the facts of which he or she is to testify and of relating them truly, in addition to understanding the necessity of testifying truthfully. *State v. Bowie*, 119 Ariz. 336, 580 P.2d 1190, 1195 (1978).

■ In the instant case, we are satisfied that the trial judge took sufficient steps to determine Michael's competency to testify and find no abuse of discretion. Further, while there were some inconsistencies in Michael's testimony, it was for the jury to decide how much the weaknesses affected his credibility as a witness. *Shuff v. State*, 476 P.2d 22, 24 (Nev.1970). Any inconsistency should go to the weight of his testimony, and not its admissibility. C. McCormick, Law of Evidence § 62, at 140–41 (2d ed. 1972).

■ Sevier's final contention is that his sentence of three concurrent ten year terms, the maximum permissible under AS 11.15.190 and AS 11.15.220 is excessive.[7] We cannot agree. The attack here was a vicious, premeditated one, notwithstanding the fortunate lack of permanent injury to Bidwell.[8] While Sevier does not have an

---

**6.** First, it might have led the jury to conclude that Sevier was a bad person because two of his best friends were arsonists. More importantly, it suggested Sevier's guilt of another criminal offense: obstruction of justice.

**7.** Sevier has not raised the issue of whether the imposition of three separate sentences in his case violates his constitutional right against double jeopardy, even though they are to be served concurrently. *See Whitton v. State*, 479 P.2d 302 (Alaska 1970). Thus, we do not ad-

dress that issue. Rule 9(e), Alaska R.App.P.; *Wren v. State*, 577 P.2d 235, 237 n.2 (Alaska 1978). The question may still be raised, however, by a separate application for post-conviction relief under the provisions of Rule 35(b), Alaska R.Crim.P.

**8.** Indeed, it is entirely possible that Sevier intended to shoot Bidwell to death, and that it was pure luck that the chamber of the revolver in firing position was empty when he first pulled the trigger.

extensive record of criminal convictions, he admitted to having received $2,500.00 on a contract to kill someone,[9] and frankly discussed in detail with the police his involvement in up to thirty arson fires. Since the morning after his apology to Bidwell, Sevier has shown little remorse for his acts. Rather, he has indicated that "if he had hit [Bidwell] with his right hand [at the time of the assault] that she wouldn't be running around yapping her mouth now." Although he has a reasonable employment history, and favorable letters from his parents and his ex-wife were presented in his behalf, these are not enough to say that the sentencing judge was clearly mistaken in labeling Sevier a worst offender and imposing the maximum sentence.[10] See State v. Chaney, 477 P.2d 441, 444 (Alaska 1970).

AFFIRMED.

---

9. The intended killing did not occur, nor apparently was any attempt made.

10. The sentence here is not out of line with past sentences which we have affirmed. See Sielak v. State, 581 P.2d 226 (Alaska 1978) (ten years affirmed for knife attack on defendant's wife; sentence imposed after defendant violated conditions of suspended imposition of sentence); Joe v. State, 542 P.2d 159 (Alaska 1975) (ten year sentence affirmed; defendant held down victim while companion stabbed him with knife); Stevens v. State, 514 P.2d 3 (Alas-

ka 1973) (ten year sentence affirmed for knife attack that came close to killing victim). See also Cooper v. State, 595 P.2d 648 (Alaska 1979) (three consecutive ten year sentences for firing gun at three police officers disapproved, but aggregate fifteen year term would be permissible); and Burleson v. State, 543 P.2d 1195 (Alaska 1975) (two consecutive twenty year sentences affirmed on mayhem conviction of defendant, with no prior criminal record, who hired another to throw acid on ex-wife and her boyfriend).