*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| STEPHAN P., | ) |
| | ) Supreme Court No. S-17076 |
| Appellant, | ) |
| | ) Superior Court No. 3PA-18-00049 CI |
| v. | ) |
| | ) O P I N I O N |
| CECILIA A., | ) |
| | ) No. 7453 – May 29, 2020 |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Vanessa White, Judge.

Appearances: Stephan P., pro se, Palmer, Appellant. Notice of Non-Participation filed by Brooke Browning Alowa, Law Offices of Kenneth J. Goldman, P.C., Palmer, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

STOWERS, Justice.

## I.     INTRODUCTION

Alaska Statute 18.66.100 provides that a victim of domestic violence, or the parent of a victim who is a minor, may petition for a protective order against a household member. Before granting this order, the court must hold a hearing and make findings that the household member committed a "crime involving domestic violence against the [victim]."

The mother of an autistic child filed a petition for a protective order against the child's father, alleging that the father kicked the child during an altercation that took place at the Extreme Fun Center in Wasilla. At the hearing on the long-term protective order, the court admitted the mother's recording of statements the son made to her approximately 30-35 minutes after the incident. The son stated that the father kicked him in the buttocks; the only disinterested witness with personal knowledge of the incident testified that the father did not kick his son.

Relying on the recording and testimony from the child's mother and therapist, the superior court found that the father committed assault; relying on the mother's testimony, the court found that the father committed criminal trespass and granted the mother's petition. The court also required the father to undergo a psychological evaluation and pay the mother's attorney's fees. We vacate and remand the superior court's assault finding and reverse the court's trespass finding. We vacate the court's protective order, its order that the father undergo a psychological evaluation, and its award of attorney's fees.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Stephan P. and Cecilia A. were married in 2002 and had a son, S.P., in 2006.[1] S.P. has been diagnosed with several health conditions including autism spectrum disorder and attention-deficit/hyperactivity disorder. Because of his developmental disorders, S.P. exhibits inattention, impulsiveness, and repetitive and rigid thinking patterns.

Stephan and Cecilia divorced in July 2015. Cecilia was awarded sole physical and legal custody of S.P., and Stephan was granted two professionally

---

[1]    We use initials in lieu of the parties' names to protect their privacy.

supervised visits and three telephone calls with S.P. per week.  Following their divorce Cecilia and Stephan strictly adhered to the visitation schedule and terms, but over time Cecilia permitted Stephan to have more contact with S.P.

Their visits evolved into unsupervised visitation from late 2016 through 2017.  When S.P. was home-schooled for a period of several months, he went to Stephan's house nearly every day.  Eventually Stephan and S.P. began spending time together without any fixed schedule.

In January 2018 Stephan took S.P. to the Extreme Fun Center, an arcade in Wasilla.  At some point during their time at the Fun Center, S.P. ran away from Stephan.  Stephan tried to stop S.P. before he ran outside.  Stephan and the Fun Center manager cornered S.P. inside, and S.P. dropped to the ground.  According to a witness, Stephan told him to get up and that they were leaving, and S.P. responded, "I am not going anywhere with you, you son of a bitch."  The witness testified that Stephan pulled S.P. up by the wrist and jacket collar and walked him out of the Fun Center.

Stephan called Cecilia to let her know he was bringing S.P. back to her, and she agreed to meet him at a restaurant.  When she arrived Stephan was parked in his truck, and S.P. was waiting inside the restaurant entryway.  She went inside and found S.P. wringing his clothing and repeating, "Mama, Papa, Mama, Papa"; she associated this conduct with S.P. preparing to tell her "something that's happened."  Cecilia used her phone to record S.P. as he explained what happened at the Fun Center:

| | |
|---|---|
| Cecilia: | What happened? |
| S.P.: | He, he called me an asshole, and he called me a little motherfucker.  And he, he also kicked me in the butt. |
| Cecilia: | Where were you? |
| S.P.: | At the Extreme Fun Center.  And I was trying to get up by myself when he, when he, mmh |

|  | (whimpers). I was just trying to get up by myself when he told me to get up. But I kept trying to get up, but he kept forcing me to get up. And, and, and he got me by my hand really, really hard. |
|---|---|
| Cecilia: | And then he kicked you? |
| S.P.: | No. Uh, when I was, when I was, when I was trying to get up then he kicked me, when I was trying to get up. And he was kicking me in my butt, in my, in my butt, and I kept — |
| Cecilia: | Were there other people there? |
| S.P.: | Yeah, the, the manager was watching. And — |
| Cecilia: | Do you know the name of the manager? |
| S.P.: | No. And then, and then, the, and then the, uh, and Papa, and then Papa kicked me in my butt when I was trying to get up. And [it] kept making me fall to the ground. |

Cecilia testified that she recorded S.P. 30-35 minutes after Stephan called her.

### B. Proceedings

#### 1. Pre-hearing proceedings

The day after the Fun Center incident Cecilia filed a petition in Anchorage district court for a domestic violence protective order under AS 18.66.100.[2] The district

---

[2] AS 18.66.100(a) allows a parent whose minor child is a victim of domestic violence to petition for an order protecting the child against a household member. Before granting such an order, the court must hold a hearing and make findings that the household member committed a "crime involving domestic violence against the [victim]." AS 18.66.100(b). AS 18.66.990(3) defines "crime involving domestic violence." Relevant to this case, criminal assault and criminal trespass are "crime[s] involving domestic violence" when committed by one household member against another household member. *See* AS 18.66.990(3)(A), (C); AS 11.41.230 (defining the
(continued...)

court held an ex parte hearing and denied Cecilia's request for a 20-day protective order. The court then transferred venue to Palmer. The Palmer superior court scheduled a hearing on the petition for a long-term protective order for February 2018 that was later continued to April.

### 2.  Protective order hearing

Lori Houston, a licensed clinical social worker and S.P.'s therapist since 2012, testified at the hearing as an expert on behalf of Cecilia. Houston described Stephan as a loving father, but she said that when Stephan loses control over S.P.'s behavior he enters an "aggressive, bully state" that causes him to discipline S.P. in harmful ways. She testified that S.P. had begun expressing reluctance about spending time with Stephan after the Fun Center incident.

Houston also described an altercation she had with Stephan at her workplace sometime in 2014 or 2015. According to Houston, Stephan was upset that she would not testify at a prior court hearing between Cecilia and Stephan. Stephan raised his voice and demanded that she testify. Ultimately, other staff were required to intervene and de-escalate the situation, and Houston barred Stephan from returning to her office. At the protective order hearing, she recommended that Stephan undergo a psychological evaluation, reconnect with S.P. in a therapeutic setting, and attend a class on parenting children with special needs.

Cecilia testified regarding the recording she made after the incident at the Fun Center. She stated that she had several subsequent phone conversations with the

---

[2]  (...continued) elements of criminal assault in the fourth degree); AS 11.46.330 (defining the elements of criminal trespass in the second degree). As written, the petition was to protect Cecilia, but the Anchorage district court converted it to a petition on behalf of S.P.

Fun Center manager, who was also present and who observed the incident, but she did not subpoena him, and he did not testify at the hearing.[3]

After describing what S.P. told her following the incident, Cecilia pivoted to discuss her desired terms for the long-term protective order. She expressed a desire to return to the terms of the 2015 divorce decree, which limited Stephan to supervised visitation with S.P. and three phone calls per week. To support her request, Cecilia asserted that Stephan did not respect her rules and boundaries, and she described two separate incidents when Stephan came to her home uninvited.

In the first, Stephan wanted to borrow Cecilia's blender. When Stephan could not reach Cecilia at work, he went to her house and knocked on the windows. Cecilia stated, "I can't remember whether it is that [S.P.] saw and opened the door or whether the front gate was locked . . . . I can't remember that part, but I know that the babysitter was wondering what to do . . . . I told [Stephan], 'You just can't do that.' "

In the second incident, Cecilia and S.P. were doing yard work in her backyard when they began arguing over how much Cecilia would pay S.P. for doing his chores. While they were arguing, Stephan arrived unexpectedly and offered to help. Cecilia told Stephan to go; when he did not leave, she threatened to call the police. As she went back inside her home to fetch her phone, Stephan backed his truck out of her driveway into the street. When the police arrived, they explained to Cecilia the mechanics of enforcing a trespass order.[4] After understanding this, Cecilia asked the police to "put a trespass again because of what had happened."

Following Cecilia's testimony, the court questioned her regarding these incidents:

---

[3]    Stephan also did not subpoena the manager.

[4]    The record does not include any trespass order.

Judge:        I was attempting to multi-task and I missed part of your testimony. Were you saying that you received a trespass order so that [Stephan] could not come on your property?

Cecilia:      I did. Per the Palmer police officer's information that he gave me, I told him I might have to go to the, to get, file for a restraining order again, and I told him what had happened. And I think, I don't know if you want to know what had happened that particular time —

Judge:        Well, I want to know how [Stephan] became aware that he was not to come on your property.

Cecilia:      I believe the Palmer police officer called him. I think they told me they were going to notify him about that.

Amanda Jones was the only disinterested witness to the Fun Center incident who testified. She was at the Fun Center planning a party when she saw Stephan chase and restrain S.P. After a chance encounter with Stephan several weeks later, Jones agreed to testify as to her observations that day. She described S.P. as "pretty out of control" during the incident, throwing himself to the ground and swearing at Stephan. She testified that Stephan did not kick or swear at S.P. and that Stephan did what "any parent would have done." On cross-examination Jones stated that Stephan was frustrated with S.P. but had not raised his voice at him.

After all the witnesses testified, Cecilia played the recording she made of S.P.'s account of the incident. Stephan did not expressly object to the use of the recording, though he did challenge the recording's trustworthiness during his closing argument when he engaged in a dialogue with the court regarding the relative weight the

court should give to the recording.[5] The court asked Stephan, "So you think I should give more weight to . . . Jones's testimony than to [S.P.]'s recorded statement?" Stephan responded, "Yes, I do. I think that . . . I don't know what an autistic mind is like and the, the blowing things out of proportion, the imaginations, the —" At that point the court interjected, "All right. Your time is up." Later, the court ruled sua sponte that the recording was admissible under the excited utterance exception to the hearsay rule because it was taken about 30 minutes after the incident and because S.P.'s manner of speech was "excited and agitated."[6]

The court found that Jones testified honestly, but it also discredited her testimony, finding that Jones was not confident she had fully observed everything that happened at the Fun Center. The court also relied on S.P.'s recorded statements and Houston's testimony that S.P. had become reluctant to spend time with Stephan since the Fun Center incident. The court found by "a preponderance, but a bare preponderance" of the evidence that Stephan kicked S.P. and therefore committed assault in the fourth degree.[7] The court also found that Stephan committed criminal trespass in the second

---

[5]     Stephan raised similar arguments challenging the trustworthiness of the recording in his motion to reconsider.

[6]     Alaska Evidence Rule 803(2) provides an exception to the rule against hearsay for statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *See generally* Alaska R. Evid. 801 (defining hearsay); Alaska R. Evid. 802 (stating hearsay is inadmissible unless an exception applies).

[7]     *See* AS 11.41.230 (defining the elements of criminal assault in the fourth degree).

degree[8] "because [Stephan] went to [Cecilia's] home without invitation after having been instructed not to do so."

Because these are both domestic violence offenses that affect S.P.,[9] the court granted the domestic violence protective order. The court limited Stephan to communication with Cecilia through email and text messages, and it ordered that Stephan's contact with S.P. be limited to the terms of the 2015 divorce decree. The court's protective order also required Stephan to undergo a psychological evaluation. The court distributed a written order to the parties in open court.

### 3. Post-hearing motions

Stephan filed a motion for reconsideration. With respect to the court's assault finding,[10] he argued that (1) the court gave too little weight to Jones's testimony; (2) Houston's testimony about a 2015 altercation with him was improper character evidence; (3) the court wrongly denied his motion to have S.P. testify; and (4) the court wrongly allowed Cecilia to play the recording. Stephan submitted an accompanying affidavit from Jones where she summarized her prior testimony and clarified that she "saw this entire incident and there was nothing that got between [Stephan] and the boy and my view of any of it at any time." Regarding the court's trespass finding, Stephan asserted that (1) the court was confused and that he never violated a trespass order; and (2) he did not receive proper notice of the trespass allegations.

---

[8]     *See* AS 11.46.330 (defining the elements of criminal trespass in the second degree).

[9]     *See* AS 18.66.990(3)(A), (C); AS 11.41.230; AS 11.46.330.

[10]     We give Stephan's argument the benefit of pro se lenience. *See, e.g.*, *Tobar v. Remington Holdings LP*, 447 P.3d 747, 753 (Alaska 2019); *Gilbert v. Nina Plaza Condo Ass'n*, 64 P.3d 126, 129 (Alaska 2003).

The superior court denied Stephan's motion, and Cecilia filed a motion for her attorney's fees and costs.[11] Stephan argued that Cecilia waived her right to pursue attorney's fees when she filed her motion more than ten days after the court distributed its judgment.[12] The court awarded Cecilia 20% of her actual attorney's fees and costs.

Stephan appeals the superior court's long-term domestic violence protective order, its requirement that he undergo a psychological evaluation, and its award of attorney's fees to Cecilia. Cecilia filed a Notice of Non-Participation in this appeal.

## III. STANDARDS OF REVIEW

"The question of competency of a particular witness to testify is . . . left in the sound discretion of the trial judge" and is reviewed for abuse of discretion.[13] "We review a trial court's 'decision to admit or exclude evidence for abuse of discretion.' "[14] Whether the trial court correctly interpreted and applied an evidentiary rule is reviewed de novo.[15]

---

[11] *See* AS 18.66.100(c)(14) ("A protective order under this section may . . . require the respondent to pay costs and fees incurred by the petitioner in bringing the action under this chapter.").

[12] *See* Alaska R. Civ. P. 82(c) ("The motion must be filed within 10 days after the date shown in the clerk's certificate of distribution on the judgment as defined by Civil Rule 58.1. Failure to move for attorney's fees within 10 days, or such additional time as the court may allow, shall be construed as a waiver of the party's right to recover attorney's fees."). Stephan also argued that AS 09.60.010(e) permitted the court to deny an award of attorney's fees if it "would inflict a substantial and undue hardship" on him. Stephan does not renew this second argument on appeal.

[13] *McMaster v. State*, 512 P.2d 879, 881 (Alaska 1973).

[14] *Getchell v. Lodge*, 65 P.3d 50, 53 (Alaska 2003) (quoting *Liimatta v. Vest*, 45 P.3d 310, 313 (Alaska 2002)).

[15] *See Sanders v. State*, 364 P.3d 412, 419-20 (Alaska 2015) ("When the
(continued...)

"We review a trial court's factual findings for clear error. We will reverse only when left with a 'definite and firm conviction . . . that a mistake has been made.' We apply our independent judgment to questions of law."[16]

A trial court's decision to grant or deny a motion for reconsideration lies within its discretion.[17] "We shall reverse only in the event there has been an abuse of discretion."[18]

## IV.    DISCUSSION

### A.    We Vacate The Superior Court's Domestic Violence Protective Order.

The superior court found that (1) Stephan assaulted S.P. when he kicked him at the Fun Center and (2) Stephan criminally trespassed by going to Cecilia's house without invitation when he had been "instructed not to do so." We vacate and remand the court's assault finding, and we reverse the court's trespass finding. Without these two findings, the domestic violence protective order cannot stand. We therefore vacate the order.

#### 1.    We vacate and remand the superior court's assault finding.

The only direct evidence that Stephan assaulted S.P. came from S.P.'s out-of-court recorded statement. And Jones squarely contradicted S.P. when she stated that

---

[15]    (...continued)
admissibility of evidence 'turns on a question of law, such as the "correct scope or interpretation of a rule of evidence," we apply our "independent judgment . . . ." ' " (quoting *Barton v. N. Slope Borough Sch. Dist.*, 268 P.3d 346, 350 (Alaska 2012))).

[16]    *McGraw v. Cox*, 285 P.3d 276, 279 (Alaska 2012) (alteration in original) (footnotes omitted) (quoting *In re Protective Proceedings of W.A.*, 193 P.3d 743, 748 (Alaska 2008)).

[17]    *See Brown v. State*, 563 P.2d 275, 279 (Alaska 1977).

[18]    *Id.*

Stephan did not kick or swear at him. Because the superior court found by "a bare preponderance" that Stephan kicked S.P., any error related to its treatment of this evidence was likely prejudicial.[19] We hold that errors related to the recording and Jones's testimony require us to vacate the superior court's assault finding. On remand the court must reexamine whether an assault occurred after reevaluating Jones's testimony and after making findings as to S.P.'s competency to testify and the trustworthiness of the recording.

          **a.**     **It was an abuse of discretion for the superior court to admit the recording without making threshold findings as to S.P.'s competency and the recording's trustworthiness.**

Stephan contends that the superior court "listen[ed] to my son who was not present, on a recording presented by Cecilia . . . . It could not be determined when and under what circumstances or coercion this recording was made." We construe Stephan's argument as a challenge to the admission of the recording under the hearsay rules.[20]

These rules provide that statements made by out-of-court declarants and offered for their truth are ordinarily inadmissible unless an exception applies.[21] The

---

[19]     *See Graham R. v. Jane S.*, 334 P.3d 688, 692 (Alaska 2014) ("[W]e will reverse an evidentiary ruling only if [the] error prejudicially affected a party's substantial rights." (second alteration in original) (quoting *Lum v. Koles*, 314 P.3d 546, 552 (Alaska 2013))).

[20]     Stephan did not object to the admission of the recording on express hearsay grounds. But before the hearing, he objected to Cecilia testifying about the Fun Center incident: "The mother was not present and can only report misinterpreted facts from hearsay." He also asked the court to require S.P. to testify personally. And the superior court sua sponte dealt with the hearsay aspect of the recording when it ruled that the recording was admissible as an excited utterance. Given this posture, the hearsay objection is preserved for our review.

[21]     Alaska R. Evid. 801(c) ("Hearsay is a statement, other than one made by
(continued...)

hearsay exceptions rely on the theory that some hearsay statements "possess circumstantial guarantees of trustworthiness sufficient to justify non-production of the declarant."[22]

The excited utterance exception derives from the declarant's condition of excitement that "temporarily stills the capacity of reflection and produces utterances free of conscious fabrication."[23] Thus, we generally view out-of-court statements pertaining to and made under conditions of stress sufficiently reliable in their own right that we have jettisoned the usual requirement for the declarant to testify in court and be subject to cross-examination.[24] But while the court may admit statements that qualify under the excited utterance exception, it still maintains discretion whether to do so.[25] The premise underlying the excited utterance exception is the presumption that the "excitement" creates a circumstantial guarantee that the utterance is trustworthy. But if there is other evidence that undermines trustworthiness — for example, that the declarant suffers from

_____

[21]    (...continued)
the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); Alaska R. Evid. 802 ("Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Alaska Supreme Court, or by enactment of the Alaska Legislature.").

[22]    Alaska R. Evid. 803 cmt.

[23]    Alaska R. Evid. 803(1), (2) cmt. (citing 6 JOHN HENRY WIGMORE, A TREATISE ON THE ANGLO-AMERICAN SYSTEM OF EVIDENCE IN TRIALS AT COMMON LAW § 1747, at 135 (1940)).

[24]    *See* Alaska R. Evid. 803(2); *State v. Agoney*, 608 P.2d 762, 764 (Alaska 1980) ("It is only the suspension of [the normal powers of reflection and conscious deliberation] which lends a special trustworthiness to the utterance, and thus justifies exempting it from the ordinary scrutiny of cross-examination on the witness stand.").

[25]    *See Getchell v. Lodge*, 65 P.3d 50, 53 (Alaska 2003) .

a mental or intellectual disability characterized by inattention and impulsiveness — then the court must take this evidence into consideration.

The trustworthiness of the recording was an issue before the court in Stephan's pre-trial motion to have S.P. testify. Rather than relying on Cecilia's recording of S.P., Stephan moved the court to allow S.P. to "explain to the court how and why he was restrained" and to "tell [the] court what he wants." And he suggested means by which the court could hear from S.P. directly by receiving S.P.'s testimony in camera. But Cecilia opposed this motion, stating that her son "fail[ed] to meet the minimum standards of witness competency" under Evidence Rule 601.[26] She highlighted his autism, intellectual disability, and "negative reactions to stress" as reasons he should not testify. The superior court denied Stephan's motion without analysis; it later explained that allowing S.P. to testify would be "problematic" and "potentially stressful" given his autism.

We acknowledge cases from other jurisdictions holding that a declarant's competency need not factor into the decision to admit a hearsay statement.[27] But the

_____

[26] Evidence Rule 601 establishes a presumption that all persons are competent to testify. *Crawford v. State*, 337 P.3d 4, 30 (Alaska App. 2014). "What is important under the general test . . . is that the witness be capable of expressing himself so as to be understood by the court . . . , and recognize the duty to tell the truth." *Sevier v. State*, 614 P.2d 791, 794 (Alaska 1980).

[27] *See, e.g.*, *Morgan v. Foretich*, 846 F.2d 941, 946 (4th Cir. 1988) ("We agree with the majority of courts that have studied this issue and have reached the conclusion that 'although a child is incompetent to testify, testimony as to his spontaneous declarations or *res gestae* statements is nevertheless admissible.' " (quoting Jay M. Zitter, Annotation, *Admissibility of Testimony Regarding Spontaneous Declarations Made by One Incompetent to Testify at Trial*, 15 A.L.R. 4th 1043 (1982))); *People v. Smith*, 604 N.E.2d 858, 871 (Ill. 1992) (holding that trustworthiness of declarant's statement "stems not from . . . competency, but rather from the unique

(continued...)

unique circumstances in this case require us to distinguish this case from the cases in other jurisdictions. Here, the parties do not dispute that S.P. is autistic and has other mental health issues; these issues raise questions as to whether he could faithfully report what happened at the Fun Center under *any* circumstances, not just in court. We also find it troubling that Cecilia recorded S.P.'s statement to use as evidence in the protective order proceedings and had S.P. actually testify at the ex parte hearing on her petition for a short-term protective order, but then vociferously objected to allowing Stephan to call S.P. as a witness at the long-term hearing, specifically citing Evidence Rule 601 and arguing S.P. was not a competent witness due in part to his autism and intellectual disability. She has used S.P. as both sword and shield, which we believe to be fundamentally inconsistent and unfair. The superior court should consider these unique facts and circumstances on remand.

A court enjoys "considerable discretion" in deciding whether to admit a hearsay statement under the excited utterance exception.[28] But because the issue of S.P.'s competency placed the recording's trustworthiness squarely before the court, it was an abuse of discretion to admit the recording absent a threshold finding on S.P.'s competency and a determination of the extent to which his autism, youth, and other mental health issues affected the recording's trustworthiness. Without the recording, which provided the only direct evidence of assault that the court found by "a bare preponderance" to have occurred, the assault finding has no evidentiary support. We therefore vacate it and remand for the court to make findings consistent with this opinion.

---

[27] (...continued)
circumstances in which . . . statements were made" and therefore that competency is "not relevant to the admission of excited utterances").

[28] *Agoney*, 608 P.2d at 764.

### b. The superior court clearly erred in finding that Jones was not confident she had a clear view of the incident.

We have repeatedly stated, "It is the job of the trial court, not the appellate court, to judge the credibility of the witnesses and to weigh conflicting evidence."[29] Stephan asserts that the superior court "had an impartial witness before [it] who testified that [Cecilia's] claim was not in fact what had actually happened and [the court] discounted [Jones's] testimony . . . and instead accepted and ruled upon hearsay." While we decline to give new or different weight to Jones's testimony than that given by the superior court, we do take issue with the court's underlying findings with respect to her testimony. The superior court found that Jones testified honestly but that Jones was not confident she had witnessed the entire incident. Based on this finding, the court gave less weight to Jones's testimony than to the recording. But we find nothing in Jones's hearing testimony to indicate that she did not have a clear view of what happened at the Fun Center or that she lacked confidence in her observations. It was therefore clear error for the court to so find and to discount Jones's testimony based on that finding.

### c. The superior court abused its discretion by declining to consider Jones's subsequent attempt to clarify the record in Stephan's motion to reconsider.

Alaska Civil Rule 77(k) outlines several grounds on which a party may move for reconsideration of a decision. A litigant may not introduce new evidence or

---

[29] *See e.g.*, *Brett M. v. Amanda M.*, 445 P.3d 1005, 1011 n.21 (Alaska 2019) (quoting *Silvan v. Alcina*, 105 P.3d 117, 122 (Alaska 2005)).

arguments in the motion,[30] but he may move for reconsideration if "[t]he court has overlooked or misconceived some material fact."[31]

In her testimony, Jones did not expressly state that she had an unobstructed view of the incident at the Fun Center. But she described the location from which she viewed what happened, and she chronicled the incident from the time she saw S.P. running through the arcade until the time Stephan ultimately apprehended him. According to Jones's testimony, from her vantage point she could hear the words and tone that Stephan used when speaking to S.P.; she could describe how Stephan apprehended S.P.; and she could observe that Stephan did not kick S.P. The superior court found that Jones was honest in her testimony and made no negative credibility findings.

In ruling on Stephan's motion for reconsideration, the court may have impliedly determined Jones's statement in her affidavit — that she "saw th[e] entire incident" and that "nothing" blocked her view — to be new evidence not introduced during the protective order hearing. But we do not arrive at the same conclusion. In her testimony at the long-term hearing, Jones could not have described the incident from beginning to end as she did unless she had a clear view of what happened. We view Jones's statements in her affidavit as clarifications of the record, made necessary because of the superior court's misconception of her hearing testimony. Where, as here, the superior court discounted her testimony for reasons not evident in the record, it was manifestly unreasonable and an abuse of discretion for the court not to consider Jones's subsequent attempt to clarify the record through her affidavit.

---

[30]     *Katz v. Murphy*, 165 P.3d 649, 661 (Alaska 2007).

[31]     Alaska R. Civ. Proc. 77(k)(1)(ii).

-17-                                                    **7453**

Given that the superior court made its assault finding by a "bare preponderance" of the evidence, had the superior court given Jones's testimony different weight, it is possible the court would have found that Stephan did not assault S.P. Because the court based the weight it gave to Jones's testimony on an erroneous factual finding and because it improperly rejected Jones's subsequent attempt to clarify the record, the court must reconsider this testimony on remand.

**2.     We reverse the court's trespass finding.**

Cecilia's petition for a protective order did not include criminal trespass as grounds for protection. Indeed, it is unclear from the record whether in her testimony Cecilia meant to raise any allegations of actionable trespass. Cecilia discussed Stephan's unauthorized visit to her property and his refusal to leave toward the end of her testimony and in the context the relief she was requesting. As justification for her request to enforce the visitation provisions of the superior court's 2015 divorce decree, she sought to persuade the court that Stephan did not "follow rules" or "respect [her] boundaries."

The superior court appears to have focused on Stephan's possible violation of a trespass order. When the police arrived, they discussed the mechanics of a trespass order with Cecilia. Cecilia then asked them to "put a trespass again because of what had happened." The court asked Cecilia whether Stephan had notice of a possible trespass order. Cecilia responded, "I believe the Palmer police officers called him. I think they told me they were going to notify him about that." The record contains no trespass order. On this evidence the court, on its own initiative, added criminal trespass as a separate basis for finding Stephan committed an act of domestic violence.

The court's finding of criminal trespass is lacking for multiple reasons. At most, Cecilia's testimony suggests the police may have contacted Stephan about not trespassing *after* the incident occurred; Cecilia's language and the context of her

testimony seem to indicate she wanted the police to warn Stephan not to trespass in the future. There was no competent evidence of a *pre-existing* "trespass order" or any other protective order prohibiting Stephan from entering Cecilia's property. The tenuous nature of this testimony is insufficient to support a finding that Stephan committed trespass. It was therefore clear error for the court to so find, and we reverse.[32]

**B.    We Vacate The Superior Court's Order Requiring Stephan To Undergo A Psychological Evaluation.**

After finding that Stephan committed domestic violence, the court ordered Stephan to undergo a psychological evaluation. The court included this directive along with its restrictions on Stephan's contact with Cecilia in the long-term protective order. As explained above, we vacate and remand the assault finding, reverse the trespass finding, and vacate the domestic violence protective order. Since the validity of the psychological evaluation order is predicated on the validity of the protective order, we also vacate the court's order for a psychological evaluation.

**C.    We Vacate The Award Of Attorney's Fees.**

Alaska Statute 18.66.100(c)(14) permits a court to "require the respondent

---

[32]    The court's finding that Stephan committed trespass may also have violated his due process rights. "To comply with due process, notice must be given sufficiently in advance of scheduled court proceedings so that the parties have a reasonable opportunity to prepare." *Geldermann v. Geldermann*, 428 P.3d 477, 483 (Alaska 2018) (quoting *Childs v. Childs*, 310 P.3d 955, 960 (Alaska 2013)). Cecilia's petition for a protective order did not include criminal trespass as grounds for protection, nor did it include any allegations of criminal trespass. Yet the superior court sua sponte found Stephan committed criminal trespass without giving him notice that he may have to defend against these allegations. We decline to hold that the court violated Stephan's due process rights because the court's trespass finding is clearly erroneous. *See Alaska Trademark Shellfish, LLC v. State*, 91 P.3d 953, 957 (Alaska 2004) ("[W]e have often recognized that appeals should ordinarily not be decided on constitutional grounds when narrower grounds are available.").

to pay costs and fees incurred by the petitioner" in seeking a domestic violence protective order. Citing this provision, Cecilia moved for an award of $4,152.36 in costs and fees. The superior court granted this motion, ordering Stephan to pay Cecilia 20% of the requested amount.[33] As with the order for a psychological evaluation, there is no basis to award attorney's fees absent a finding that Stephan committed an act of domestic violence. Because we vacate the assault finding and reverse the trespass finding, we also vacate the award of attorney's fees.

## V.    CONCLUSION

We VACATE the superior court's assault finding and REMAND for further proceedings consistent with this opinion. We REVERSE the court's criminal trespass finding. We VACATE the court's long-term protective order, its order requiring Stephan to undergo a psychological evaluation, and its award of attorney's fees to Cecilia.

---

[33]    The superior court's award of 20% of Cecilia's requested attorney's fees suggests that the court may have applied Alaska Civil Rule 82(b)(2) in calculating the award. We note, however, that any fee award in domestic violence petitions are to be awarded under AS 18.66.100(c)(14).